In the Matter of Town of Dryden et al., Appellants, v Tompkins County Board of Representatives, Respondent.

Third Department, May 31, 1990

APPEARANCES OF COUNSEL

*Davoli, McMahon & Kublick, P. C. (Jan Kublick* and *John M. Murphy, Jr.,* of counsel), for appellants.

*Langan Grossman Kenney Dwyer & Reitz, P. C. (James F. Dwyer* and *Harris Lindenfeld* of counsel), for respondent.

### OPINION OF THE COURT

Mikoll, J.

The issues presented on this appeal are whether Supreme Court, in its decision dismissing this CPLR article 78 proceeding, properly held that (1) the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) requirement that a lead agency describe and evaluate the range of reasonable alternatives to a proposed action for a landfill site

(6 NYCRR 617.14 [f] [5]) is a substantive and not a procedural requirement, (2) the "rule of reason" or "hard look" standard of review had been complied with in this case, and (3) respondent was not required to exercise its condemnation powers under EDPL 404 to access and test all the potential landfill sites. We conclude that Supreme Court's ruling as to each issue was correct. Its judgment should therefore be affirmed.

The historical background and relevant facts of the instant case are fully stated in the decision of Supreme Court (144 Misc 2d 873). In early 1986, respondent began development of a comprehensive solid waste management plan including the siting, construction and operation of a new sanitary landfill. Respondent named itself as lead agency pursuant to SEQRA. Guidelines and studies were set and the procedures prescribed by SEQRA and its regulations were implemented. Phase I would identify and rank potential landfill sites in Tompkins County, with phase II covering the actual on-site studies and investigations.

Under phase I, the engineering consulting firm hired by the county identified 23 potential sites, which were then ranked according to their suitability for service as a landfill. The particular rankings were based on the consideration of various environmental, social and economic factors, which were each then weighted according to their varying degrees of importance. Phase I was completed and accepted. Thereafter, in an apparent effort to avoid possible litigation with property owners, it was decided to test only those sites to which a right of entry could be secured. Subsequently, 9 of the 23 sites were field tested, including 5 of the top 10 sites, 2 of which were among the 3 sites receiving the highest over-all scores.

Upon completion of phase II testing, three sites were recommended as potential landfill sites. One of those was a site known as "DR-7" (originally ranked 16 out of the 23 potential sites) located within petitioner Town of Dryden. Site DR-7 was ultimately selected as the preferred site. The other two recommended sites were later eliminated from consideration due to wetland and access problems. However, 6 of the remaining 9 sites which were field tested remained in consideration in case site DR-7 was later eliminated (see, 6 NYCRR part 360). Respondent thereafter accepted the final environmental impact statement (hereinafter FEIS) for site DR-7 and ordered preparation of a proposed findings statement. After a review period, respondent authorized the filing of the findings state-

ment for site DR-7 and the filing of an application to construct and operate a sanitary landfill at the site.

Petitioners then brought the instant CPLR article 78 proceeding to annul respondent's determination and to enjoin construction of the landfill at site DR-7. Supreme Court entered a judgment dismissing the petition and this appeal ensued.

■ Petitioners' first contention, that "site testing involves the assembly and evaluation of information, which is a procedural process under SEQR[A]" and, therefore, the "alternatives" requirement *(see,* 6 NYCRR 617.14 [f] [5]) is procedural, is without merit. Rather, as Supreme Court held, the "alternatives" requirement is substantive in nature. This interpretation is clearly indicated by the Court of Appeals decision in *Matter of Jackson v New York State Urban Dev. Corp.* (67 NY2d 400, 416), wherein the court stated that: "Substantively, SEQRA and applicable regulations list general categories of information that must be analyzed in an [environmental impact statement] EIS: an EIS must set forth a description of the proposed action, including its environmental impact and any unavoidable adverse environmental effects (ECL 8-0109 [2] [a]-[c]; 6 NYCRR 617.14 [f] [1]-[4]); alternatives to the proposed action (ECL 8-0109 [2] [d]), *including a 'no-action alternative'* (6 NYCRR 617.14 [f] [5]); and mitigation measures proposed to minimize the environmental impact (ECL 8-0109 [2] [f]; 6 NYCRR 617.14 [f] [7]). In addition, SEQRA requires agencies to 'act and choose alternatives which, consistent with social, economic and other essential considerations, to the maximum extent practicable, minimize or avoid adverse environmental effects' (ECL 8-0109 [1])" (emphasis supplied). A similar result was reached in *Matter of Environmental Defense Fund v Flacke* (96 AD2d 862) where the court, in determining that the lead agency satisfied the "alternatives" requirement, noted that "the requirement that alternatives be considered must be construed in light of reason" *(supra,* at 864). Additionally, the court in *Horn v International Business Machs. Corp.* (110 AD2d 87, *lv denied* 67 NY2d 602), also indicated that the requirement to study alternatives is substantive in nature, stating that: "It is well established that the SEQRA requirements governing the contents of an EIS must be construed in light of the rule of reason. Not every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before a FEIS will satisfy the substantive requirements of SEQRA * * * The degree of detail

with which each factor must be discussed will vary, of course, with the circumstances and nature of each proposal" *(supra,* at 94, quoting *Aldrich v Pattison,* 107 AD2d 258, 266). Clearly, in this case Supreme Court's construction of the "alternatives" requirement as substantive in nature was the proper construction.

Petitioners next argue that the allegedly tainted on-site investigation process employed by respondent did not meet the "hard look" standard of review to be applied in measuring respondent's actions and ultimate determination. Petitioners assert that respondent was not only required to field test each of the 23 potential sites but to do so in order, beginning with the highest ranked site. However, it does not appear from the record that respondent had promised to field test each site as petitioners claim. Rather, respondent indicated that only a limited number of sites would be tested on-site. "Accessible ownership" was declared to be an important factor in the evaluation of the potential sites and contributed to limiting the number of sites considered. Moreover, petitioners do not cite any factual or legal authority then in effect requiring that the sites be tested in the order in which they were ranked.

■ Petitioners' foregoing arguments are not sufficient to show that the "hard look" standard of review was not appropriately applied in this case. "[T]he standard of judicial review for challenges involving substantive compliance with SEQRA guidelines is limited" *(Horn v International Business Machs. Corp.,* 110 AD2d 87, 92, *supra).* "[T]he courts have allowed State or local 'lead agencies' considerable latitude in the exercise of discretion on substantive environmental matters" *(supra,* at 92). In evaluating substantive matters, the reviewing court should not substitute its judgment for that of the agency *(Matter of Schodack Concerned Citizens v Town Bd.,* 148 AD2d 130, 134, *lv denied* 75 NY2d 701). "Rather, [the reviewing court] should only determine whether 'the agency identified the relevant areas of environmental concern, took a "hard look" at them, and made a "reasoned elaboration" of the basis for its determination' " *(supra,* at 134-135, quoting *Matter of Jackson v New York State Urban Dev. Corp., supra,* at 417).

Petitioners' argument that political considerations and prior negotiations with certain landowners improperly affected the site selection process is not a valid argument because, viewing

the record as a whole, respondent's selection of site DR-7 was rational and is supported by substantial evidence. A court " 'may only annul a determination as to the sufficiency of an environmental impact statement and the environmental consequences of the proposed project "if it is not rational—if it is arbitrary and capricious or unsupported by substantial evidence" ' " *(Horn v International Business Machs. Corp.,* 110 AD2d 87, 93, *supra,* quoting *Aldrich v Pattison, supra,* at 267; *see, Matter of Residents for More Beautiful Port Washington v Town of N. Hempstead,* 149 AD2d 266, 273).

■ Finally, petitioners' contention that respondent was obliged to exercise its condemnation power under EDPL 404 to access and test all 23 potential landfill sites is not persuasive. Petitioners advance the proposition that because governmental agencies possess the power of eminent domain and have a much broader range of alternative sites available to them than does a private developer *(see, Horn v International Business Machs. Corp., supra,* at 95; *Webster Assocs. v Town of Webster,* 112 Misc 2d 396, 410, *affd* 85 AD2d 882, *revd on other grounds* 59 NY2d 220) and private developers are limited in their choice of alternative sites by their own economic resources, real estate market trends and the sites actually available for purchase *(see, Horn v International Business Machs. Corp., supra,* at 95), respondent's failure to test the 23 sites violated the mandates as well as the intent of SEQRA. These conclusions reached by petitioners are not supported by the case law cited, nor by any statute or regulation in effect at the time the site testing was performed *(see, Town of Dryden v Tompkins County Bd. of Representatives,* 144 Misc 2d 873, 881, *supra).* It is sufficient that respondent's actions were rational. Respondent was required to study a reasonable range of alternatives, not every conceivable alternative *(see, Horn v International Business Machs. Corp., supra,* at 94-95). Respondent tested a reasonable number of alternative sites without having to exercise its condemnation power. Significantly, respondent obtained confirmation from the Department of Environmental Conservation that it had tested a sufficient number of potential sites voluntarily made available for such purposes.

WEISS, J. P., YESAWICH, JR., MERCURE and HARVEY, JJ., concur.

Judgment affirmed, without costs.