OPINION OF THE COURT
F. Warren Travers, J.
Petitioners commenced this CPLR article 78 proceeding seeking to annul a determination by the New York State Department of Transportation (DOT) to replace a bridge spanning the New York State Barge Canal. Petitioners also seek to annul a determination by the State Historic Preservation Office (SHPO) to not list the subject bridge on the National Historic Register.
The Town of Pittsford moved to intervene in this proceeding as a party respondent. The court granted the motion without opposition by order dated December 12, 1990. The Town of Pittsford has submitted no other papers but has incorporated the papers submitted by the Attorney-General as its own position.
Mitchell Road is a town road that is approximately one-half mile long. It connects two State highways that are on opposite sides of the Barge Canal. The canal itself is spanned by a steel truss bridge which has an open steel grating type surface. The bridge, referred to as the Mitchell Road Bridge, was built in 1911 as part of the Barge Canal System. The bridge which is owned and maintained by DOT is a one-lane bridge.
Inspection of the bridge in 1985 revealed that severe corrosion had occurred. Thereafter, weight and height limits were imposed. In June 1986, DOT prepared a project proposal to replace the bridge. Since that time, the bridge has further deteriorated and it is now closed to traffic.
As a result of the bridge closing, substantial traffic has been rerouted through the nearby Village of Pittsford. The respondents contend that approximately 7,000 vehicles per day previously used Mitchell Road as a connector between the two State highways described above. Respondents contend further that great traffic congestion has occurred in the Town and Village of Pittsford because of the closing of Mitchell Road Bridge.
Mitchell Road is a residential neighborhood. Some of the homes on Mitchell Road, in the vicinity of the bridge, are *41 listed in the National Historic Register. There is no dispute that the Mitchell Road neighborhood is unusual in its history and present character.
The petition alleges seven separate causes of action against the respondents. In summary, the petitioners claim the decision by DOT to replace the existing one-lane bridge with a two-lane bridge is arbitrary and capricious and unsupported by the record. Petitioners assert that the State Environmental Quality Review Act (SEQRA) has not been complied with by DOT. Petitioners further claim that SHPO was arbitrary and capricious in not listing the Mitchell Road Bridge on the National Historic Register. Listing of the bridge would require the consideration of additional factors in the decision-making process (17 NYCRR 15.11).
The respondents contend that the challenge to the National Historic Register issue is time barred and, in any event, the determination by SHPO is adequately supported by the record.
The court has read and considered the papers submitted on the various issues raised including the claimed lack of an adequate traffic analysis, the traffic count figures; the traffic accident studies; the levels of service on existing roads together with projected changes; the Landmark Society’s report; the correspondence between various individuals and governmental agencies; correspondence between agencies. Under SEQRA, there are claims of improper classification of the bridge replacement as a Type II project; a failure to take a hard look at the impacts; improper segmentation; and a failure to follow SEQRA procedural requirements relating to preparation of an environmental assessment form (EAF).
As to respondent Lehman, the court determines the proceeding to be timely commenced. The four-month time period to commence the action began to run when the final decision was made to replace the bridge. The 1983 determination not to place the bridge on the National Historic Register together with the 1988 review based upon the Landmark Society’s report are preliminary steps in the decision-making process. The final decision is that of replacement of the bridge. It is from that date that the Statute of Limitations begins to run. The decision to place or not place the bridge on the National Historic Register had no impact upon the petitioners at the time it was made. The impact upon the petitioners occurred when the decision was made to replace the bridge. (See, Matter of Wing v Coyne, 129 AD2d 213.)
*42 The decision not to place the bridge on the National Historic Register is supported by substantial evidence in the record. The determination is not arbitrary or capricious and must be upheld. A review of the record makes it clear that SHPO did review and consider the Landmark Society’s report. It was based upon that report that certain of the homes on Mitchell Road were listed on the National Historic Register. SHPO concluded that 10 of 122 similar bridges spanning the Barge Canal should be listed. The Mitchell Road Bridge was not one of those chosen to be listed. The petitioners’ consultants who prepared the Landmark Society’s report concluded that it should be listed. This conclusion is not binding upon SHPO.
Petitioners also claim that the respondents failed to provide the Landmark Society’s report to the Federal agency involved in approving funding for the project. This is refuted in the record by a letter dated September 18, 1990 to petitioners’ attorneys which not only recites that the agency had the report for review, but that the agency actually visited the site prior to making a determination that the project would have "no adverse effect”.
Based upon the foregoing, the claims against respondent Lehman are without merit and are dismissed without costs.
As to DOT, the court concludes that DOT has failed to comply with the procedural requirements of SEQRA. The matter must be remanded to DOT for compliance with SEQRA. The determination to replace the Mitchell Road Bridge contained in the May 1990 final design report is annulled.
In reviewing DOT’s actions "it is not the role of the courts to weigh the desirability of any action or choose among alternatives, but to assure that the agency itself has satisfied SEQRA, procedurally and substantively”. (Matter of Jackson v New York State Urban Dev. Corp., 67 NY2d 400, 416.)
The basic purpose of SEQRA is to incorporate the consideration of environmental factors into the existing planning review and decision-making processes of State, regional and local governmental agencies at the earliest possible time. (ECL 8-0109; 6 NYCRR 617.1 [c].)
In keeping with this mandate, DOT drafted a project proposal dated June 1986 for the replacement of the Mitchell Road Bridge. The proposal identified the existing problem together with various solutions. Within the project proposal, *43 many of the environmental concerns associated with the project were identified and discussed. Most significantly at page 30 is the determination that the "proposal does not completely satisfy the criteria contained in paragraph 37 of Section 15.14 for classification as a Type II. Therefore, this proposal is classified as subject to further SEQR processing”. The reference is to 17 NYCRR part 15 wherein DOT has identified its own list of Type II actions. Type II actions are those that have been determined not to have a significant effect on the environment. A Type II action does not require any further SEQRA consideration (6 NYCRR 617.5 [a] [1]).
As stated in Gerrard, Ruzow & Weinberg, Environmental Impact Review in New York (§ 3.05 [5] [1990]), "a number of nominally Type II actions may be subject to varying interpretations which, depending on the particular facts involved, might make an agency conclude that the action should be viewed as 'unlisted’ rather than Type II”. Here, the agency made the determination that the bridge replacement proposal did not qualify as a Type II project. (See, Matter of Anderberg v New York State Dept. of Envtl. Conservation, 141 Misc 2d 594, for a case in which the court upheld an agency determination that a bridge replacement was a Type II action.) The matter before this court, however, has many factors discussed above, that were not present in the Anderberg case. It certainly was not unreasonable for the agency in the case now before the court to conclude that Type II status was inappropriate for the Mitchell Road Bridge replacement proposal.
Having determined that Type II status did not apply, the agency was required to follow the procedural requirements of SEQRA (6 NYCRR 617.5). A preliminary classification of the action as a Type I or unlisted activity was required. Depending upon the classification, a full environmental assessment form (EAF) or a short EAF would be required. Neither document was prepared in this case, nor does it appear that any determination of significance was made as required by 6 NYCRR 617.6. The draft report for the project dated March 1990 and the final design report dated May 1990 both recite in the introduction that the project is a "Type II action”.
DOT failed to follow the procedural requirements of SEQRA after it determined that the Mitchell Road project was not a Type II action. The mere recitation in the final design report that it is a Type II action does not excuse the failure to comply with SEQRA. The proper remedy is annulment of the determination (see, Matter of Tri-County Taxpayers Assn. v *44 Town Bd., 55 NY2d 41; Matter of Schenectady Chems. v Flacke, 83 AD2d 460, 463; Matter of Houser v Finneran, 99 AD2d 926).
The determination by DOT must be annulled and the matter remanded to DOT for a determination of the positive or negative environmental significance of the project (Chinese Staff & Workers Assn. v City of New York, 68 NY2d 359).
The court need not consider the other issues raised at this time.