In the Matter of CITY OF ITHACA, Appellant, v TOMPKINS COUNTY BOARD OF REPRESENTATIVES et al., Respondents.

Third Department, January 31, 1991

APPEARANCES OF COUNSEL

*Whiteman Osterman & Hanna (Philip H. Gitlen* and *Jeffrey S. Baker* of counsel), for appellant.

*Langan Grossman Kenney Dwyer & Reitz, P. C. (James F. Dwyer* and *Harris Lindenfeld* of counsel), for respondents.

## OPINION OF THE COURT

MAHONEY, P. J.

In 1970, respondent Tompkins County assumed responsibility for solid waste disposal within its geographic boundary. By 1986, the county was required to find a new landfill site and develop a new plan for solid waste disposal. The county hired consultants who issued a phase I report in February 1987 identifying 23 possible sites for a new landfill. The county accepted the report and made a positive declaration pursuant to the State Environmental Quality Review Act (ECL art 8)

(hereinafter SEQRA). In October 1987, the consultants issued a phase II report which provided additional assessments of a landfill site and also recommended use of a central processing facility (hereinafter the facility) and recycling as part of the solid waste management plan. With regard to the facility, the consultants recommended, *inter alia,* that the facility be near the center of where waste in the county is generated, an area identified as being the northeast corner of petitioner, the City of Ithaca (hereinafter the City). In November 1987, the county accepted the phase II report and, the next month, committed itself to the facility after designating a landfill site in the Town of Dryden *(see, Matter of Town of Dryden v Tompkins County Bd. of Representatives,* 157 AD2d 316).

In April 1988, the consultants submitted another report suggesting 11 sites, four of which were outside the City, for the facility. The initially favored site, at the City Waste Water Treatment Plant, became unavailable and attention focused on a site at the County Airport. After Federal approval was denied, attention focused on an industrial park in the City. A positive declaration under SEQRA was made and a draft environmental impact statement (hereinafter DEIS) prepared. This site, though, was rejected when various environmental problems were identified. A new site study was authorized and, in February 1989, a report suggested six plans for the facility at five sites. In March 1989, the county selected a location on Commercial Avenue in the City as the preferred site for the facility. A DEIS was authorized and accepted by the county in September 1989. A final environmental impact statement (hereinafter FEIS) was authorized and accepted in December 1989, when it was filed and a findings statement also accepted. The City thereafter commenced this CPLR article 78 proceeding to annul the approval of the Commercial Avenue site for the facility. Supreme Court, in a well-reasoned opinion, dismissed the petition and this appeal followed.

■ The City argues that the county failed to comply with SEQRA. The City first argues that the county did not initiate SEQRA review early enough in the process. It argues that the county committed itself to the facility as early as June 1987 and certainly by December 1987 when it accepted the phase II report and should have begun SEQRA review then rather than when the Commercial Avenue site finally was identified. We disagree. SEQRA review "is not required until a specific project plan * * * is actually formulated and proposed" *(Matter of Programming & Sys. v New York State Urban Dev.*

*Corp.,* 61 NY2d 738, 739). Indeed, in *Matter of Citizens for an Orderly Energy Policy v Cuomo* (159 AD2d 141, 160), we recently rejected a suggestion that SEQRA review was required where there was no "formulation of any concrete plan of decommissioning the Shoreham facility". In this case, there was no specific project plan for the facility until the various favored sites were identified after the April 1988 report. A DEIS was even begun concerning one of these sites. Upon settling on the Commercial Avenue site, and thereby specifying a specific, concrete proposal, the county commenced SEQRA review. This is precisely what SEQRA requires and we find no merit to the City's contention otherwise.

■ The City next argues that the county failed to adequately consider alternative sites as required under SEQRA. The alternatives requirement, which we have held to be substantive *(see, Matter of Town of Dryden v Tompkins County Bd. of Representatives, supra,* at 319-320), "must be construed in light of reason" *(Matter of Environmental Defense Fund v Flacke,* 96 AD2d 862, 864). In this case, the phase II report identified a general area in which the facility should be located. The April 1988 report considered 11 alternative sites with attention devoted to such matters as wetlands, aquifers, wildlife, traffic, zoning and the like. The February 1989 report evaluated six plans on five sites and considered such issues as water, soils, wetlands, land use, visual and noise impacts and traffic. The DEIS mentioned alternative sites and environmental concerns with reference to the previous reports. That certain concerns raised by the City were not specifically addressed in some of the reports does not detract from the work done and analyses made. Considering that "[n]ot every conceivable environmental impact, mitigating measure or alternative must be identified and addressed before a FEIS will satisfy the substantive requirements of SEQRA" *(Aldrich v Pattison,* 107 AD2d 258, 266), we are satisfied that the county's consideration of alternative sites complied with its requirements under SEQRA.

■ The City also contends that the county failed to take the necessary hard look under SEQRA at the Commercial Avenue site. Our review of the various reports, including the DEIS and FEIS for the facility at Commercial Avenue, reveals extensive review of such issues as odor, rodents, birds, noise, traffic and air quality, as well as those specified earlier. This review convinces us that the county adequately addressed the environmental impacts and made a reasoned judgment con-

cerning the Commercial Avenue site so as to comply with SEQRA *(see, e.g., Akpan v Koch,* 75 NY2d 561, 570).

■ The City also argues that it was improperly excluded from the SEQRA process because it is an "involved agency" *(see,* 6 NYCRR 617.2 [t]). It argues that the facility will require a City permit to discharge into the City sewer system and the required permit approval makes the City an involved agency. The record, however, fails to substantiate the City's claim that the facility will require a permit as a "significant industrial discharger" under the City Code. In any event, it may well be that the county is exempt from any such permit requirements *(see, Matter of County of Monroe [City of Rochester],* 72 NY2d 338).

CASEY, WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment affirmed, without costs.