■ In the Matter of DAVID MCKELVEY et al., Respondents, v FRANKLIN E. WHITE, as Commissioner of the New York State Department of Transportation, et al., Appellants, et al., Respondent.—Casey, J. Appeals (1) from a judgment of the Supreme Court (Travers, J.), entered February 14, 1991 in Albany County, which partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to, *inter alia,* annul a determination of the Department of Transportation approving the replacement of a bridge in the Town of Pittsford, Monroe County, and (2) from an order of said court, entered October 22, 1991 in Albany County, which denied a motion by various respondents for renewal.

Petitioners are residents of the Mitchell Road area of the Town of Pittsford, Monroe County, who objected to the determination of the Department of Transportation (hereinafter DOT) to replace the one-lane bridge which carries Mitchell Road over the Barge Canal with a two-lane bridge. The focus

of petitioners' objection in this proceeding was DOT's finding that the project was a type II action which does not require an environmental impact statement or other procedure under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) *(see,* 6 NYCRR 617.13 [a]). Supreme Court annulled the determination. Respondents Commissioner of Transportation and the Town of Pittsford appeal from the judgment and also from an order which denied their motion for renewal.

Although labeled a motion to renew, we are of the view that the postjudgment motion for reconsideration was in fact one seeking reargument, the denial of which is not appealable *(see, Levy v Blue Cross & Blue Shield,* 162 AD2d 931, 932). Accordingly, we will limit our review to Supreme Court's judgment and the record upon which it was based.

Supreme Court concluded that DOT had determined that the project was subject to further SEQRA processing in its "project initiation report" and that, therefore, DOT was required to follow the procedural requirements of SEQRA before issuing its final determination. The Commissioner contends that the project initiation report constituted a presentation of the feasible alternatives under consideration to deal with the aging and deteriorating Mitchell Road bridge. According to the Commissioner, the statement in the report, which classified the project as subject to further SEQRA processing because the proposal did not completely satisfy the criteria for classification as a type II action, merely recognized that no determination on the issue could be made until one of the alternatives was selected, and it did not constitute a final determination that the project was not a type II action. Although we agree with the Commissioner, we note that Supreme Court relied upon a literal reading of the poorly worded and confusing statement in the project initiation report.

SEQRA requires that an initial determination as to the need for an environmental impact statement be made "[a]s early as possible in the formulation of a proposal for an action" (ECL 8-0109 [4]). SEQRA review is not required, however, until a specific project plan is actually formulated and proposed *(see, Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738, 739). Thus, an agency may conduct preliminary planning without making a SEQRA evaluation "provided those activities do not commit the agency to commence, engage in or approve such action" (6 NYCRR 617.3 [c] [1]). The project initiation report in this case clearly consti-

tutes such preliminary planning, for there could be no specific project plan until one of the alternatives identified in the report was selected *(see, Matter of City of Ithaca v Tompkins County Bd. of Representatives,* 164 AD2d 726, 729). Accordingly, the final determination of whether the project was a type II action was properly made in the final design report.

The remaining issue is whether there is a rational basis for DOT's determination which found the proposed replacement of the existing one-lane bridge with a two-lane bridge to be a type II action. Pursuant to 6 NYCRR 617.13 (b), DOT adopted its own regulation which provides that the replacement, at the present site or immediately adjacent thereto, of an existing bridge, not involving substantial expansion of the structure, is a type II action (17 NYCRR 15.14 [e] [37] [iv]). 6 NYCRR 617.13 (d) (1) similarly provides that "replacement of a facility, in kind, on the same site" is a type II action. The Commissioner contends that because the replacement bridge is to be located in the same place as the old bridge and because it will carry approximately the same volume of traffic as the old bridge did before it was closed, there exists a rational basis for classifying the action as type II. We disagree.

The replacement bridge will be the same length as the existing bridge, but its profile will be two feet higher, and its over-all width of 35 feet will be 15 feet 3 inches wider than the 19-foot 9-inch width of the existing bridge. This 75% increase in width* suggests that the replacement involves substantial expansion of the structure, a suggestion that is confirmed by DOT's rejection of the alternatives which involved rehabilitation of the existing bridge or replacement with a one-lane bridge. In rejecting the former alternative, DOT explained that "rehabilitation of the existing narrow structure does not address the existing or projected traffic needs of the area", and the latter alternative was rejected "because the current (prior to closing the bridge) and projected traffic volumes are more than ten times greater than the acceptable level for a single-lane bridge". It is clear, therefore, that DOT has determined to replace the existing narrow one-lane bridge, which "restricts the safety and operating efficiency of Mitchell Road", with a significantly wider, two-lane bridge, which will safely and efficiently handle existing and projected traffic volumes on Mitchell Road. Having so determined, there is no rational process by which DOT could also

---

* The increase is even greater when the curb-to-curb width of the new bridge (32 feet) is compared to that of the existing bridge (16 feet).

determine that the replacement did not involve substantial expansion of the structure. On the contrary, it is readily apparent that DOT found substantial expansion of the structure, from a 19-foot 9-inch wide single-lane bridge to a 35-foot wide two-lane bridge, to be essential to the safe and efficient flow of existing and projected traffic on Mitchell Road.

DOT's regulation also provides that certain criteria must be met in order for the action to be type II, including "no significant changes in passenger or vehicle traffic volume, vehicle mix, local travel patterns or access" (17 NYCRR 15.14 [d] [2]). The evidence in the record establishes that before the bridge was closed the traffic volume was such that vehicles approaching the existing bridge often had to stop to allow oncoming vehicles to cross the bridge. One of the purposes of replacing the existing one-lane bridge with a two-lane bridge is to provide for two-way traffic across the bridge, which would change the stop and go traffic pattern on Mitchell Road to a continuous flow. Although such a change in the local traffic pattern may be of some benefit, it cannot be considered insignificant.

Based upon the undisputed evidence in the record that substantial expansion of the structure to provide a safe and efficient method of accommodating traffic volume, which the existing structure could not provide, was an essential ingredient of the project and would effect a significant change in the existing stop and go traffic pattern on Mitchell Road, DOT's determination that the project is a type II action is irrational. Supreme Court's judgment must, therefore, be affirmed.

Weiss, P. J., Yesawich Jr., Crew III and Harvey, JJ., concur. Ordered that the appeal from order is dismissed and judgment affirmed, with costs. [See, 150 Misc 2d 39.]