In the Matter of CARL L. SEYMOUR, as Supervisor of the Town of Northumberland, et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.

Third Department, December 17, 1992

102

**APPEARANCES OF COUNSEL**

*Oliver & Oliver,* Albany *(Lewis B. Oliver, Jr.,* and *Harriet B. Oliver* of counsel), for appellants.

*Bond, Schoeneck & King,* Albany *(David R. Sheridan* and *Michael D. Di Fabio* of counsel), for County of Saratoga, respondent.

*Robert Abrams, Attorney-General,* Albany *(Lawrence A. Rappoport, Peter H. Schiff* and *Douglas H. Ward* of counsel), for New York State Department of Environmental Conservation, respondent.

**OPINION OF THE COURT**

YESAWICH JR., J.

Since the late 1970's, respondent Saratoga County has been working to solve its solid waste disposal problems. A plan to build and operate a resource recovery facility, including an incinerator, which progressed to the point of final site selection, was abandoned in late 1987 because of public opposition. In 1988 the County formed a Solid Waste Committee, which established a recycling program and reviewed various options for waste disposal, among them a plan to create a regional landfill with several neighboring counties which was considered and rejected. In 1989, faced with a pressing need to address the solid waste problem, the County designated itself a planning unit and began to develop a solid waste management plan (hereinafter the plan) pursuant to ECL 27-0107, which also was to serve as a generic environmental impact statement.

On December 19, 1989 the County forwarded a draft plan to respondent Department of Environmental Conservation (hereinafter DEC). The plan recommended the construction and operation of a County-wide landfill, along with aggressive recycling and recovery efforts, and included a proposed metho-

dology for selecting the landfill site. DEC commented on the draft, after which a second draft was forwarded to DEC in April 1990. Again, DEC did not approve the plan, but on June 11, 1990 responded with detailed comments. On September 14, 1990 a final draft was submitted to DEC, in which all previous comments were purportedly addressed. This plan was adopted by the County Board of Supervisors on October 1, 1990 and, on October 12, 1990, DEC approved the plan pursuant to 6 NYCRR 360-15.10 (c) and issued a findings statement in which the plan was noted to have met the requirements of the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA).

Petitioners commenced this CPLR article 78 proceeding seeking to annul DEC's approval of the plan and the site selection methodology included therein. Supreme Court concluded that DEC's determination was rational and supported by substantial evidence, and that petitioners' challenge to the site selection methodology was premature. A judgment was entered dismissing the petition and petitioners appeal.

█ It is petitioners' contention that DEC's approval process merely entails a review of the County's plan to ensure that each of the detailed statutory (ECL 27-0107 [1] [b]) and regulatory (6 NYCRR 360-15.9, 360-1.9, 360-1.14, 360-2.12) requirements have been satisfied and that this exercise does not require any agency expertise. We disagree.

A solid waste management plan is intended to represent a careful consideration of the particular circumstances of a planning unit, and the impact of various potential solutions on the unit, over at least a 10-year period. Meaningful review of such a far-reaching document cannot be undertaken without substantial knowledge of the vagaries of solid waste disposal and the potential problems which may arise from application of various technologies under varying circumstances; a comprehensive analysis is essential. The need for such an analysis, rather than the merely ministerial "checklist" evaluation petitioners envision, is underscored by the language of 6 NYCRR 360-15.10 (c), which declares that only when DEC has decided that the plan contains the elements set forth in 6 NYCRR 360-15.9, "and those elements are determined to be satisfactory," can a plan be approved. To make this determination, it is necessary for DEC, given its expertise, to set limits or bounds and to prudently exercise its discretion within those parameters. Because to secure its approval of a plan obviously requires "factual evaluations in the area of

[DEC's] expertise", its interpretation of the statute and regulations, and the decision based thereon, must be afforded deference *(see, Flacke v Onondaga Landfill Sys.,* 69 NY2d 355, 363).

■■ Having reviewed the plan, and particularly the County's responses to each of DEC's comments set forth in chapter 12 thereof, we find ample support for DEC's determination that in final form the plan satisfies all of the statutory and regulatory conditions needed for approval. Parenthetically, we note that petitioners' assertion that the County violated 6 NYCRR 360-15.9 (a) (4), because its plan does not consider such circumstances and industries as agriculture, dairy farming, horse raising and horse racing, is not well taken inasmuch as the wastes from these activities are not considered municipal solid wastes and the facilities which deal with them are normally exempt from regulation *(see,* 6 NYCRR 360-1.7 [b] [3]). Moreover, the record discloses that the agriculture and dairy industries specifically were not mentioned "because they do not generate significant amounts of solid waste for disposal in landfills".

■ Nor does the County's failure to identify all proposed paper sludge facilities located in the County, particularly Finch Pruyn and Scott Paper companies' proposed sludge landfill, require annulment of DEC's approval of the County's plan. 6 NYCRR 360-15.9 (c) states that the plan must identify proposed or existing facilities within the County which have the capacity to manage solid waste, their expected life and current operating status. As observed by DEC, paper sludge generated by paper mills will not be accepted at the County's landfill. As the disposal of this waste will be the responsibility of the private interests creating it, omission of any reference to a proposed sludge facility is far from a mortal deficiency, for it does not change the assessment of the amount and kind of solid waste which the County is expected to manage. Furthermore, the paper companies did not even purchase the land on which they intended to build their sludge facility until a few weeks before the plan was finally approved by DEC. SEQRA review had not been completed, necessary zoning changes had not been procured, and no permit application had been filed. DEC's decision that at this early stage of planning a facility is not "proposed" within the meaning of the regulation is neither arbitrary nor capricious.

We turn now to petitioners' contention that DEC erred in approving the plan because the generic landfill siting methodology, included in the plan as chapter 8, does not comply

with the siting requirements set forth at 6 NYCRR 360-1.14 (c) and 360-2.12, and that Supreme Court erred in dismissing that claim as premature. DEC argues that approval of a plan only involves a determination that the plan contents meet the requirements of 6 NYCRR 360-15.9 and because a siting procedure is not one of those requirements, a review of the site selection methodology to be employed is not part of the determination brought up for review by petitioners' appeal. Furthermore, DEC points out that it will pass upon the specific site ultimately selected by the County when the County makes application for a permit for a landfill at that site. Petitioners counter that because the general procedure for selecting a site was included in the plan, and the adoption of the plan committed the County to siting a landfill in accordance with that procedure, DEC was required to review the procedure for compliance with SEQRA, including conformance with the regulations governing siting.

■ Although SEQRA requires review of proposed actions at the earliest possible time (ECL 8-0109 [4]), the question remains whether the County's adoption of site selection criteria, as part of its solid waste management plan, is an "action" within the meaning of the environmental laws. Concluding that it is not, we concur in Supreme Court's determination that petitioners' claims in this regard are premature.

Mere adoption of a siting methodology does not commit the County to a "specific project plan" *(Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738, 739); hence, SEQRA review is not required at this juncture *(see also, Matter of City of Ithaca v Tompkins County Bd. of Representatives,* 164 AD2d 726, 728-729; *Housing Justice Campaign v Koch,* 164 AD2d 656, 670-671, *lv denied* 78 NY2d 858; *compare, Matter of Wing v Coyne,* 129 AD2d 213 [county resolution approving a specific project on a defined site is an "action"]). Moreover, the detailed requirements of 6 NYCRR 360-2.12 assure that before anything concrete is undertaken, a thorough examination of the site selection process and the site itself will be completed. To require that the site selection methodology be scrutinized before a site is even chosen would not only be duplicative, but would also involve unnecessary speculation. Bearing in mind the volatile nature of waste disposal proposals (consider the County's previous plans, one

of which progressed to final site selection before being jettisoned), this represents a rational and efficient interpretation of the statutory requirements of SEQRA.

MIKOLL, J. P., CREW III, MAHONEY and HARVEY, JJ., concur.

Ordered that the judgment is affirmed, without costs.