[598 NYS2d 93]

In the Matter of CARL L. SEYMOUR, as Supervisor of the Town of Northumberland, et al., Appellants, v COUNTY OF SARATOGA, Respondent.

Third Department, May 20, 1993

### APPEARANCES OF COUNSEL

*Oliver & Oliver,* Albany *(Lewis B. Oliver, Jr.,* of counsel), for appellants.

*Bond, Schoeneck & King,* Albany *(David R. Sheridan* of counsel), for respondent.

### OPINION OF THE COURT

YESAWICH JR., J.

In 1989, respondent designated itself a planning unit pursuant to ECL 27-0107 and contracted with Smith & Mahoney, P.C., an engineering firm, to develop a solid waste management plan (hereinafter the plan). The plan, which was ultimately adopted by respondent and approved by the Department of Environmental Conservation (hereinafter DEC), called for the establishment of a County landfill at a site to be selected in accordance with a general methodology set forth therein.

Smith & Mahoney commenced implementation of the site selection process and, in November 1990, the firm completed a landfill siting study "interim report". This report outlined how, in accordance with the plan's methodology, nine preliminary sites were initially selected and then three primary sites were chosen by means of an evaluation matrix. Finally, it detailed how the three primary sites were evaluated, and how the recommended "final site" was to be ultimately selected. After performing further field tests on the three primary sites, the firm recommended that the landfill be constructed at a site referred to herein as "the Kobor Road site".

Thereafter, on March 28, 1991, respondent's Board of Supervisors adopted Resolution No. 86 of 1991 (hereinafter the resolution) which accepted the recommendation—prefatorily it was recognized that constructing and operating the landfill is a type I action—and designated the Kobor Road site "the preferred primary site" for the project. By the resolution the engineering firm was authorized to prepare a full environmental assessment form for the project, and to "undertake other investigations and activities as required to site, design, construct and operate a County-wide landfill" at the Kobor Road site. Significantly, the resolution also empowered and directed respondent's County Attorney to "undertake all necessary and appropriate steps", including initiation of eminent domain proceedings, to "site, design, construct and operate" a County-wide landfill at the site.

Petitioners commenced this CPLR article 78 proceeding to annul the resolution, asserting that because it constituted an "action" as defined by the State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]), respondent's failure to comply with the mandates of SEQRA prior to adopting the resolution renders it null and void. Petitioners also maintain that respondent neglected to observe the requirements of Agriculture and Markets Law § 305 (former [4]) and County Law § 226-b (1). Supreme Court dismissed the petition and petitioners appeal.

■ At the outset we note that, although the issue was not raised by either party, the relief requested by petitioners—annulment of a legislative act—is not properly sought under CPLR article 78 (*see, Matter of Lakeland Water Dist. v Onondaga County Water Auth.,* 24 NY2d 400, 407). Therefore, we exercise our discretion under CPLR 103 (c) to convert the proceeding to a declaratory judgment action with the petition serving as the complaint.

■ Respondent contends, and Supreme Court found, that because the resolution labels the Kobor Road site a "preferred" site, rather than a "final" site, it is not an action of the type contemplated by SEQRA. Furthermore, it is argued, that because the resolution authorizes only those activities which are "necessary and appropriate", it must be read as circumscribed by the requirements of SEQRA; according to respondent, given that SEQRA review must be undertaken before a final site is actually chosen, such selection, and legal actions taken up as a consequence of it, are not "necessary and appropriate" until after the SEQRA review has been

completed. While seemingly correct, this thesis ignores the fact that the passage of the challenged resolution effectively constituted selection of the site.

To be borne in mind is that the overriding purpose of SEQRA is to assure that the decision maker has considered pertinent environmental information before making a final decision *(see, Matter of Tri-County Taxpayers Assn. v Town Bd.,* 55 NY2d 41, 46), and an environmental impact statement (hereinafter EIS) is the means by which such information is conveyed. For this reason, SEQRA requires that actions, as that term is contemplated by SEQRA (ECL 8-0105 [4]), are to be reviewed "[a]s early as possible" in the decisional process for purposes of determining whether an EIS will be necessary (ECL 8-0109 [4]; *Matter of Tri-County Taxpayers Assn. v Town Bd.,* 79 AD2d 337, 339, *mod on other grounds* 55 NY2d 41, supra). Although premature review can be duplicative and inefficient *(cf., Matter of Seymour v New York State Dept. of Envtl. Conservation,* 184 AD2d 101), it frustrates the purpose of SEQRA to delay the preparation of an EIS beyond the point of actual decision making.

Passage of a resolution or an ordinance by a governmental unit can be an "action" as defined by SEQRA if it commits the unit to "a definite course of future activities" *(Matter of Wing v Coyne,* 129 AD2d 213, 217; *see, Matter of City of Glens Falls v Board of Educ.,* 88 AD2d 233, 236-237). However, the regulations promulgated by DEC pursuant to SEQRA provide that an agency may engage in preliminary planning activities without triggering the requirements of SEQRA, as long as those activities "do not commit the agency to commence, engage in or approve such action" (6 NYCRR 617.3 [c] [1]; *see, Matter of McKelvey v White,* 184 AD2d 834, 835-836 ["project initiation report" which outlines alternatives is not "action"]; *Matter of City of Ithaca v Tompkins County Bd. of Representatives,* 164 AD2d 726, 729 [no "specific project plan", and hence no SEQRA "action", until favored sites are identified]).

We perceive respondent's resolution, considered in its entirety, to be a broad-based grant of power to engage in many different types of activities, all focused on the construction and ultimate operation of a landfill at the Kobor Road site. Although that site is labeled "the preferred primary site", it is evident that, barring any unforeseen circumstances or field test results, the site has been selected. This is most readily apparent in the resolution's authorization of the initiation of eminent domain proceedings. The resolution, on its face, con-

stitutes sufficient authorization by respondent's Board of Supervisor's for Smith & Mahoney, or the County Attorney, to obtain permits and hire contractors to build the landfill, and even to operate the facility once it has been completed; no further Board vote need be taken to authorize these activities after SEQRA review is had—this despite the fact that pertinent environmental information developed as a result of that review could have an impact on the Board's decision. Thus, by passage of the resolution, respondent has approved these activities prematurely. Having selected a site for the landfill and authorized concrete action with respect thereto, respondent moved from the preliminary planning stage into the realm of definite action and with it acquired a corresponding obligation to satisfy SEQRA's requirements *(see, Matter of City of Glens Falls v Board of Educ., supra,* at 236-237; *see also, Matter of Save the Pine Bush v City of Albany,* 70 NY2d 193, 203).

MERCURE, J. (dissenting). I respectfully dissent. In my view, a fair reading of Resolution No. 86 of 1991 supports respondent's contention that its adoption does not constitute an "action" which would trigger the need for an environmental impact statement (hereinafter EIS; *see,* ECL 8-0105 [4], [5]; 6 NYCRR 617.2 [b]; 617.3 [c] [1]). To the contrary, the resolution selects a preferred primary site for construction of a proposed County-wide landfill and, as such, constitutes mere preliminary planning which does not commit respondent to commence, engage in or approve the project *(see,* 6 NYCRR 617.3 [c] [1]; *Matter of McKelvey v White,* 184 AD2d 834, 835-836). State Environmental Quality Review Act (ECL art 8 [hereinafter SEQRA]) review "is not required until a specific project plan * * * is actually formulated and proposed" *(Matter of Programming & Sys. v New York State Urban Dev. Corp.,* 61 NY2d 738, 739; *see, Matter of Citizens For An Orderly Energy Policy v Cuomo,* 78 NY2d 398, 416-417; *Matter of McKelvey v White, supra,* at 835; *Matter of City of Ithaca v Tompkins County Bd. of Representatives,* 164 AD2d 726, 728-729). In addition to accepting its expert's recommendation concerning the preferred primary site, respondent's resolution also recites that the selection of a site for and the design, permitting, construction and operation of the proposed landfill is a type I action under 6 NYCRR part 617 and accordingly provides for SEQRA review, a procedure we approved of in *Matter of City of Ithaca v Tompkins County Bd. of Representatives (supra).*

In my view, the resolution's authorization of the County Attorney to "undertake all necessary and appropriate steps, including, but not limited to, proceedings pursuant to the Eminent Domain Procedure Law, to site, design, construct and operate [the proposed landfill] and such other legal proceedings as may be deemed necessary to the implementation of th[e] resolution", viewed in the context of the entire resolution, is not intended to and does not "commit [respondent] to commence, engage in or approve [the] action" (6 NYCRR 617.3 [c] [1]). Rather, tempered by the qualifying language "as may be deemed necessary to the implementation of this resolution", the apparent intent of this provision is to grant sufficient powers to ensure thorough environmental review including, for instance, on-site evaluation and testing of alternative sites (cf., *Matter of Town of Dryden v Tompkins County Bd. of Representatives,* 157 AD2d 316, *affd* 78 NY2d 331).

For the foregoing reasons, I would affirm Supreme Court's judgment dismissing the petition.

MIKOLL, J. P., and CREW III, J., concur with YESAWICH JR., J.; MERCURE, J., dissents in a separate opinion.

Ordered that the judgment is reversed, on the law, without costs, matter converted to a declaratory judgment action, respondent's Resolution No. 86 of 1991 is hereby annulled and it is declared that any such actions taken under the authorizations provided by that resolution are null and void.