OPINION OF THE COURT
George B. Ceresia, Jr., J.
The plaintiff-petitioner (hereinafter petitioner) has commenced the above-captioned "hybrid” proceeding seeking, inter alia, injunctive and declaratory relief to prevent the defendants-respondents (respondents) from taking any action in furtherance of an ordinance passed by the Troy City Council on May 31, 1996 (on a vote of five to four in favor of the ordinance) which amended the 1996 budget by levying a supplemental real estate tax upon the taxpayers of the City of Troy.
The instant controversy centers on the Troy City Charter which was amended by Local Laws, 1994, No. 5 of the City of Troy. The Charter amendment, approved at a referendum of the voters in the November 1994 general election, changed the City’s form of government from a "city manager” system to *666 that of a "strong mayor”. The effective date of the Charter, as amended, was January 1, 1996.[1]
On December 22, 1995 the City Council (operating under the then-existing Charter) adopted Local Laws, 1995, No. 9 of the City of Troy. This Local Law, effective December 29, 1995, amended the Troy City Charter to, inter alia, create certain legal counsel positions for the City Council majority and minority, and to create the positions of Police Court Prosecutor and Inspector of Internal Affairs (each appointed for five-year terms). In addition, the Local Law adopted a new Troy City Charter § 2.21.1 which recited in sum and substance that any local law amending the Charter could not be acted upon until it had been the subject of at least three public hearings, each conducted a minimum of 30 days apart, two of which were to be held immediately prior to a regular meeting of the City Council.
On April 19, 1996 the Troy City Council passed Local Laws, 1996, No. 1 of the City of Troy on a vote of eight to one in favor with the petitioner casting the sole dissenting vote. Local Law No. 1 (1996) repealed certain of the Charter amendments enacted by Local Law No. 9 (1995) including the creation of the positions of Legislative Counsel, Police Court Prosecutor and Inspector of Internal Affairs. Local Law No. 1 also amended section 2.21.1 of the Troy City Charter, retaining the requirement that three public hearings be held to act upon local laws to amend the Charter, but eliminating the requirement that the hearings be held 30 days apart. It also eliminated the requirement that at least two of the three public hearings be held immediately before a regular meeting of the Council.
Thereafter and on May 2, 1996, the City Council adopted Local Laws, 1996, No. 2 of the City of Troy which amended the Troy City Charter to permit the City Council to amend the 1996 budget approved in December 1995. The amended budget made provision for the levy of a supplemental real property tax as of July 1, 1996, to be collected in the same manner as the second installment of the 1996 real property tax. An ordinance amending the 1996 fiscal year budget and imposing a 1996 supplemental real property tax was adopted by the Troy City Council on May 31, 1996.
Petitioner alleges, inter alia, that Local Law No. 1 (1996) was not properly enacted and that it therefore must be declared *667 null and void. It is argued that by virtue of the invalidity of Local Law No. 1 (1996) the budget amendments to the 1996 budget were not properly enacted and should therefore be set aside. Request is made that the court declare that the 1996 mid-year supplemental real property tax be determined to be unlawful. Petitioner cites the following defects in Local Law No. 1 (1996): that the Troy City Council failed to comply with Municipal Home Rule Law § 20 (which requires five days’ advance notice of a public hearing); that Local Law No. 1 (1996) violated Troy City Charter § 2.21.1 (adopted by Local Law No. 9 [1995]) by reason that two of the three public hearings on the Local Law were not held immediately prior to regular Council meetings; that Local Law No. 1 (1996) was not properly amended after its introduction; that three public hearings on the final version of Local Law No. 1 (1996) were never held; that Local Law No. 1 (1996) was not referred to the proper standing committee as required under Troy City Charter § 2.05.2 and/or the introduction and sponsorship of said Local Law violated Troy City Charter § 2.05.2 and that therefore said Local Law was never lawfully passed; Local Law No. 1 (1996) violated Municipal Home Rule Law § 23 (2) (f) which recites that when abolishing, curtailing or transferring the appointive powers of elected officials a mandatory public referendum is required; that enactment of Local Law No. 1 (1996) violated Municipal Home Rule Law § 24 (2) (b) which provides that any local law which dispenses with a provision of law requiring a public notice or hearing is subject to permissive referendum and could, therefore, not take effect until at least 45 days after its adoption. As a consequence of all of the foregoing, it is argued, the adoption of Local Law No. 2 (1996) was unlawful, null and void.
The respondents, through the City of Troy Corporation Counsel, have served an answer in which it is alleged that Local Law No. 9 (1995) is not valid and enforceable because it was superseded by the new Charter, which became effective January 1, 1996, or because it was not properly enacted in the first place. Respondents argue that Local Law No. 9 (1995), adopted on December 22, 1995, was void ab initio because it purported to amend the Troy City Charter which had not yet become effective. According to this line of reasoning Local Law No. 9 (1995) had a life of no more than nine days, expiring at midnight on December 31, 1995. Respondents also argue that Local Law No. 9 (1995) was adopted in violation of Municipal Home Rule Law § 20 (5) which states that no local law shall be *668 passed until a public hearing has been held thereon upon five days’ notice. It is indicated that notice of the December 20, 1995[2] public hearing on Local Law No. 9 (1995) was published in the newspaper on December 16, 1995. This, it is argued, was insufficient notice for the public hearing conducted on December 20, 1995, when consideration is given to General Construction Law § 20. It is pointed out that under General Construction Law § 20, the number of days within which or after or before which an act is authorized or required to be done means the number of calendar days exclusive of the calendar day from which the reckoning is made. With regard to this latter point it indeed appears, and the court so finds, that the public notice with respect to the public hearing on Local Law No. 9 (1995) was insufficient, being four days rather than the requisite five (see, e.g., 41 Kew Gardens Rd. Assocs. v Tyburski, 124 AD2d 553 [2d Dept 1986], lv denied 68 NY2d 612).
The court first observes that all of petitioner’s arguments with regard to the illegality of the 1996 budget amendment (Local Law No. 2 [1996]) are predicated upon alleged errors and flaws in the enactment of Local Law No. 1 (1996), which preceded it.
The court cannot ignore the fact that the Charter amendments approved by the voters in 1994 (Local Law No. 5 [1994]) were to be effective on January 1, 1996 (see, Troy City Charter § 15.09).[3] These amendments contained a specific provision regulating the manner in which a local law could be adopted to amend the Charter (see, Troy City Charter § 2.21, Local Law No. 5 [1994]).
In the court’s view the 1995 City Council did not have the power to revise a future Charter. The revised Charter, including the provisions for amendment of the revised Charter, were not yet effective at the time Local Law No. 9 (1995) was enacted, and thus the then City Council was not amending its Troy City Charter. If the law and public policy were to permit an amendment to a prospective Charter which had been approved by public referendum, it would be possible for City of *669 ficials elected under the old form of government to thwart the will of the electorate (or, perhaps, dilute the public will) by simply changing the voter-approved Charter provisions before they ever became effective.
Phrased differently, it is fair to conclude that the citizen-voters of the City of Troy, by casting their ballots in favor of the Charter revision, approved the Charter as an integrated document, with two fundamental expectations: (1) that the Charter would become effective as written on January 1, 1996; and (2) that any amendments of the future Charter would be accomplished through actions taken by officials delegated with that responsibility under the new form of City government, whose powers had been augmented and/or curtailed (as the case may be) by the new Charter and, more importantly, who were subject to the control of the electorate in accordance with the provisions of the new Charter (governing terms of office, districts, etc.).
Moreover, as stated in Municipal Home Rule Law § 10 (1) (ii) (c) (1), a city has the power to pass local laws regarding the revision of its charter. It is arguable that while the 1995 City Council could indeed amend its then-existing charter, it was not empowered under Municipal Home Rule Law § 10 (1) (ii) (c) (1) to amend a charter which was not yet effective (see, 1987 Atty Gen [Inf Opns] 87-91, where the Attorney-General expressed an opinion that a new charter may not be amended before its effective date).
The court concludes that Local Law No. 9 (1995) did not, and could not, operate to amend Local Law No. 5 (1994). Since Local Law No. 1 (1996) has been challenged as being in violation of Local Law No. 9 (1995), the court concludes that petitioner’s cause of action with regard to this theory has no merit.
Among the arguments raised, petitioner contends that the four-month Statute of Limitations under CPLR 217 should bar respondents from maintaining a challenge to the validity of Local Law No. 9 (1995). The court is mindful that in an action for a declaratory judgment the determination of the appropriate Statute of Limitations is governed by the case of Solnick v Whalen (49 NY2d 224). In that case the Court of Appeals held that in making this determination: "[I]t is necessary to examine the substance of that action to identify the relationship out of which the claim arises and the relief sought * * * If that examination reveals that the rights of the parties sought to be stabilized in the action for declaratory relief are, or have been, open to resolution through a form of proceeding for which a *670 specific limitation period is statutorily provided, then that period limits the time for commencement of the declaratory action” (Solnick v Whalen, supra, at 229-230).
The court is mindful that, generally speaking, "annulment of a legislative act — is not properly sought under CPLR article 78” (Matter of Seymour v County of Saratoga,, 190 AD2d 276, 278 [3d Dept 1993]). The court concludes that CPLR 217 is not applicable to the instant matter. In the absence of a specific limitation period the "catch-all” provision of CPLR 213 (1) is found to apply (see, Solnick v Whalen, supra, at 230). In addition it would appear that under certain circumstances an improperly enacted local law may be found to be invalid and of no effect despite the absence of a prompt direct challenge.[4]
In view of the findings of the court with respect to Local Law No. 9 (1995), the validity of Local Law No. 1 (1996) must be evaluated not against Local Law No. 9 (1995) but rather against the provisions of the voter-approved Charter (Local Law No. 5 [1994) and the provisions of the Municipal Home Rule Law. The court makes the following findings:
(1) It is undisputed that three public hearings were conducted with respect to Local Law No. 1 (1996). It appears that only one public hearing was required (see, Municipal Home Rule Law § 20 [5]). Section 2.21 of Local Law No. 5 (1994) made no mention of public hearings in connection with passage of a local law to amend the Charter. Of the three public hearings held in connection with Local Law No. 1 (1996) only two were challenged as being defective. There is no claim that the February 1,1996 public hearing was defective. The court concludes that the unchallenged public hearing of February 1, 1996 was sufficient to satisfy Municipal Home Rule Law § 20 (5).
(2) It is claimed that the public hearings conducted on March 14, 1996 and April 19, 1996 were not held prior to a "regular *671 meeting” of the City Council as required under Local Law No. 9 (1995). Aside from the fact that only one public hearing was required, neither the Municipal Home Rule Law, nor section 2.21 of the Troy City Charter (Local Law No. 5 [1994]) contains a requirement that public hearings be conducted prior to "regular” meetings of the City Council. In any event, it appears that the regular meetings of March 2, 1996 and April 4, 1996 were rescheduled, respectively, due to a severe snowstorm on March 2, 1996 and due to religious observances on April 4, 1996. The court finds that these additional public hearings were validly conducted.
(3) It is claimed that the text of Local Law No. 1 (1996) was improperly amended in violation of the 1996 Rules of the Council. In the court’s view, a rules violation is not a procedural defect of such magnitude as to invalidate the Local Law. Moreover, petitioner has failed to demonstrate that Troy City Charter § 2.21 (Local Law No. 5 [1994]) was violated (that is, that the amended Local Law was not on the desks of councilpersons for at least seven days). The fact that Local Law No. 1 (1996) may not have been in its final form during the course of all of the public hearings is, in the court’s view, of no particular moment since the purpose of the public hearings is to obtain public input prior to the adoption of the Local Law. Public comment would serve no purpose if the proposed legislation could not thereafter be amended. The court discerns no requirement that the Local Law be in final form before the conduct of a public hearing and it is significant that there is no claim that the final version of the Local Law substantially deviated from the subject matter under discussion at the public hearings. "Substantial compliance with Municipal Home Rule Law § 20 (4) [governing introduction and passage of local laws] is sufficient” (Matter of Pete Drown, Inc. v Town Bd., 188 AD2d 850, 852 [3d Dept 1992]). The rule of substantial compliance would, in the court’s view, apply equally to Charter provisions governing the passage of proposed local laws.
(4) It is claimed that Local Law No. 1 (1996) was improperly introduced and sponsored. In the court’s view, these matters are not so significant as to invalidate Local Law No. 1 (1996). "Only a departure in substance from the formula prescribed by statute will invalidate a municipal enactment” (Alscot Investing Corp. v Laibach, 65 NY2d 1042, 1044 [1985] [where a local law was challenged on grounds, inter alia, that it was not properly introduced]).
(5) Petitioner maintains that Local Law No. 1 (1996) was invalid by reason of failure to conduct a public referendum under *672 Municipal Home Rule Law § 23 (2) (f). The court finds that no referendum was necessary since Local Law No. 1 (1996) did not curtail the powers of an elected official, but in fact was an attempt to restore the powers of elected officials purportedly removed pursuant to Local Law No. 9 (1995). The court finds Local Law No. 9 (1995) to be void ab initio (see, Ferraro v Rettaliata, 165 AD2d 860 [2d Dept 1990], supra) and, in any event, it could not amend a City Charter not yet in effect.
(6) Petitioner maintains that under Municipal Home Rule Law § 24 (2) (a) Local Law No. 1 (1996) was subject to permissive referendum because it dispenses with a provision of law requiring a public notice or hearing. In the court’s view, Local Law No. 1 (1996) in fact served to add two more public hearings that were not required under either the voter-approved Charter (Local Law No. 5 [1994]) or under Municipal Home Rule Law § 20 (5). Under the circumstances, Municipal Home Rule Law § 24 (2) (a) is inapplicable.
The court has reviewed and considered petitioner’s remaining contentions and finds them to be without merit. As a consequence, the court concludes that the Troy City Council satisfied all necessary procedural requirements in the enactment of Local Law No. 1 (1996).
Since the City of Troy 1996 supplemental budget amendment (Local Law No. 2 [1996]) is challenged solely on the basis of the invalidity of Local Law No. 1 (1996), the court concludes that petitioner has failed to demonstrate that said Local Law was improperly enacted.
To summarize, the court concludes that (1) Local Law No. 9 (1995) did not operate to amend the voter-approved Troy City Charter (Local Law No. 5 [1994]), which was not yet effective; (2) Local Law No. 1 (1996) has not been demonstrated to be procedurally defective and did not need to satisfy the requirements of Local Law No. 9 (1995); and (3) Local Law No. 2 (1996) has not been shown to be procedurally defective.
The court finds that all injunctive relief and relief in the form of mandamus must be denied. The court further finds that respondents are not subject to the penalties contained in Second Class Cities Law § 44.
Accordingly, it is ordered, that petitioner’s motion to dismiss respondents’ affirmative defenses is denied; and it is further ordered, adjudged and declared, that Local Law No. 9 (1995) was not validly enacted and further, did not operate to amend Local Law No. 5 (1994) inasmuch as Local Law No. 5 (1994) did *673 not become effective until January 1, 1996; and it is ordered, adjudged and declared, that Local Law No. 9 (1995) is void ab initio as an attempted amendment of Local Law No. 5 (1994); and it is ordered, adjudged and declared, that Local Law No. 1 (1996) is not invalid by reason of noncompliance with Local Law No. 9 (1995); and it is ordered, adjudged and declared, that Local Law No. 1 (1996) is not invalid by reason of failure to comply with the procedural requirements of either the Troy City Charter or the Municipal Home Rule Law; and it is ordered, adjudged and declared, that Local Law No. 2 (1996) is not invalid by reason of a failure of the Troy City Council to satisfy the requirements of the Troy City Charter during the course of passage of Local Law No. 1 (1996) and/or by reason of the failure to satisfy the requirements of the Municipal Home Rule Law; and it is ordered, adjudged and declared, that respondents, Walsh, LaPosta, Doran, Stone and DeBonis are not subject to the penalties provided for under Second Class Cities Law § 44.
Ordered and adjudged, that the complaint-petition be and hereby is in all other respects dismissed.

. See, Troy City Charter § 15.09 (as amended by Local Laws, 1994, No. 5 of City of Troy).

. The published notice indicated that the public hearing would be held on December 20, 1995. Local Law No. 9 (1995) was adopted on December 22, 1995.

. Section 15.09 of the new Troy City Charter recites: "This charter, as amended, shall take effect on the first day of January, 1996, provided that those amendments which abolish, transfer, or curtail the powers of the city manager and transfer them to an elected mayor shall be approved by the electorate in the November 1994 general election.”

. In Ferraro v Rettaliata (165 AD2d 860 [2d Dept 1990]) the Supervisor-elect of the Town of Huntington brought a CPLR article 78 proceeding to challenge Local Laws adopted in 1989 transferring certain appointive powers of the Town Supervisor to the Town Board. The argument was made that the transfer of appointive powers was ineffective since there had been no public referendum in compliance with Municipal Home Rule Law § 23 (2) (f). The Court found that the appointive powers in question had been improperly transferred from the Town Board to the Town Supervisor by Local Laws enacted in 1986 and 1988, since these Local Laws had not been preceded by a public referendum. As a consequence, the Court found that there was never a valid transfer of power from the Town Board to the Town Supervisor and that the challenged Local Laws merely restored to the Town Board the appointive powers which had been improperly removed by the prior Local Laws.