*344
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 After several years of State Environmental Quality Review Act (SEQRA) compliance measures by respondent (the Sara-toga County Board of Supervisors) in connection with establishing a County-wide landfill, appellants ask that respondent be returned to square one because of improper site selection. In the unique circumstances presented we, like the trial court and Appellate Division, refuse to order a redundant de novo environmental review.
 

 Faced with imminent closure of 13 local municipal landfills, the County of Saratoga during the 1980’s began considering ways to address its solid waste disposal needs. Eventually, the County designated itself a "planning unit” pursuant to ECL 27-0107 and contracted with consulting engineers Smith & Ma-honey to develop a Solid Waste Management Plan/Generic Environmental Impact Statement.
 

 The Draft Plan/GEIS, published in December 1989, provided a detailed evaluation of alternative approaches, recommended a County-wide landfill for the disposal of solid wastes that could not be used or recycled, and offered criteria for determining the most suitable site. After public hearings at three locations, comments were reviewed and incorporated, and in October 1990 respondent adopted and the Department of Environmental Conservation approved the Final Plan/GEIS.
 

 Applying the criteria for the landfill siting process, in November the County issued an Interim Siting Study which identified three primary sites for further evaluation — two in
 
 *345
 
 the Town of Northumberland and one in the Town of Moreau. Preliminary field investigations were conducted at each site both to determine suitability for landfill development on the basis of hydrogeologic characteristics and to provide information for a preliminary evaluation of potential environmental impacts.
 

 In February 1991, appellants commenced a CPLR article 78 proceeding seeking to annul DEC’s approval of the Plan/GEIS and its site selection methodology. Supreme Court dismissed the petition and the Appellate Division affirmed
 
 (Matter of Seymour v New York State Dept. of Envtl. Conservation,
 
 184 AD2d 101
 
 [Seymour
 
 i]).
 

 Following the preliminary field investigations, respondent in March adopted Resolution No. 86 of 1991 designating Kobor Road in the Town of Northumberland as the "preferred primary site” for the proposed landfill. The Resolution authorized County employees and consultants to "prepare a full EAF [Environmental Assessment Form] for the Kobor Road Site and to undertake other investigations and activities as required to site, design, construct and operate a County-wide landfill at the Kobor Road Site.” In addition, the Resolution empowered the County Attorney to initiate eminent domain proceedings to further these ends. Appellants (the Town of Northumberland, its Supervisor and its Town Board) responded with an article 78 proceeding challenging the resolution on the ground that the County had selected its landfill site prior to SEQRA compliance.
 

 While appellants’ petition was pending in Supreme Court, respondent designated itself "lead agency” for the proposed landfill project, approved a full EAF for the Kobor Road site, issued a positive declaration and authorized Smith & Mahoney to prepare a Draft Environmental Impact Statement. The DEIS described the characteristics of the proposed Kobor Road landfill, the history of the project, existing alternatives to a landfill and the environmental impacts associated with the project. The DEIS additionally summarized the previous siting study, and provided the results of the required endangered species evaluation and archeological and traffic studies.
 

 In February 1992, Supreme Court dismissed appellants’ article 78 petition, concluding that Resolution No. 86, which labeled Kobor Road as a "preferred site,” was not an "action” of the type contemplated by SEQRA. During the pendency of the Appellate Division appeal, in August 1992 respondent filed
 
 *346
 
 a Notice of Completion of Draft Environmental Impact Statement and Notice of SEQRA Hearings. A month later, respondent adopted Resolution No. 168 acknowledging completion of the DEIS and noting the dates for SEQRA public hearings and the time period for public comments. Respondent then circulated the DEIS, the Notice and a draft Part 360 permit application throughout the County, inviting public participation in the review process.
 

 In February 1993, respondent approved the Final Environmental Impact Statement for the site, which included responses to the comments of more than 60 individuals, agencies and organizations, and authorized the filing of the FEIS and the Notice of Completion.
 

 The following month, respondent completed the environmental review process by adopting Resolution No. 38, which approved the County’s SEQRA Findings Statement, and Resolution No. 39, directing Smith & Mahoney to submit to the DEC a Part 360 application (6 NYCRR part 360) to construct and operate the proposed County-wide landfill at the Kobor Road site.
 

 In May 1993, the Appellate Division, with one Justice dissenting, held that respondent had proceeded with the landfill site selection and authorized concrete action prior to SEQRA compliance. The court annulled Resolution No. 86 of 1991 and declared "any such actions taken under the authorizations provided by that resolution * * * null and void”
 
 (Matter of Seymour v County of Saratoga,
 
 190 AD2d 276, 281
 
 [Seymour II]).
 

 By the time of the decision, however, respondent had already completed its FEIS, issued its required SEQRA Findings Statement, and submitted its permit application for construction and operation of the landfill site. Rather than commence a de novo environmental review, respondent in June 1993 adopted Resolution No. 103 confirming and ratifying its SEQRA review of the Kobor Road site and moved in the Appellate Division to declare the
 
 Seymour II
 
 decision moot. That motion was summarily rejected (App Div, 3d Dept, July 23, 1993).
 

 Appellants thereafter brought a third article 78 proceeding — the present case — this time challenging the validity of the FEIS and the SEQRA Findings Statement as well as seeking de novo environmental review. Also at about this time the County received notice from the DEC that its permit application had been accepted as complete.
 

 
 *347
 
 In January 1994, Supreme Court annulled the Board’s vote on Resolution No. 38 and deferred resolution of appellants’ remaining claims pending further action by respondent. Supreme Court determined that Board members had not been provided with copies of the SEQRA Findings Statement prior to their vote and the vote taken on the SEQRA Findings Statement was therefore defective. Thereafter, Supreme Court granted respondent’s motion for reconsideration and held that any defect in respondent’s adoption of the SEQRA Findings Statement had been cured by respondent’s adoption of Resolution No. 103. The court also rejected appellants’ claims regarding the sufficiency of the FEIS.
 

 On respondent’s appeal, the Appellate Division unanimously affirmed. The court concluded that respondent’s completion of the SEQRA review, together with passage of Resolution No. 103 cured the earlier identified deficiencies and de novo review was both unwarranted and redundant
 
 (Matter of King v Saratoga County Bd. of Supervisors,
 
 223 AD2d 894). The court additionally rejected claims that respondent had failed to take a "hard look” at the environmental impacts of the landfill project and that the FEIS was in some way deficient.
 

 Although respondent now attempts to relitigate the issue, the Appellate Division held in
 
 Seymour II
 
 that respondent violated SEQRA by undertaking an "action” before preparing and filing an EIS, and we are bound by that determination as law of the case. Instead, the issue before us is what remedy follows. Appellants urge that the only correct course is to order de novo environmental review. In the circumstances presented, we disagree.
 

 More than 20 years ago the Legislature enacted SEQRA, and by so doing formally recognized that environmental concerns should take their proper place alongside economic interests in the land use decision-making processes of State and local agencies
 
 {see,
 
 ECL 8-0103 [7]; 6 NYCRR 617.1 [d]). To insure that this laudable goal would be accomplished, the Legislature created an elaborate procedural framework requiring parties to consider the environmental ramifications of their actions "[a]s early as possible” (ECL 8-0109 [4]) and to "the fullest extent possible” (ECL 8-0103 [6]). The mandate that agencies implement SEQRA’s procedural mechanisms to the "fullest extent possible” reflects the Legislature’s view that the substance of SEQRA cannot be achieved without its procedure, and that departures from SEQRA’s procedural mechanisms thwart the purposes of the statute. Thus it is clear that strict, not substantial, compliance is required.
 

 
 *348
 
 Nor is strict compliance with SEQRA a meaningless hurdle. Rather, the requirement of strict compliance and attendant spectre of de novo environmental review insure that agencies will err on the side of meticulous care in their environmental review. Anything less than strict compliance, moreover, offers an incentive to cut corners and then cure defects only after protracted litigation, all at the ultimate expense of the environment.
 

 Starting 15 years ago in
 
 Matter of Tri-County Taxpayers Assn. v Town Bd.
 
 (55 NY2d 41), this Court underscored the importance of strict SEQRA compliance. We concluded that the Town had violated SEQRA by failing to prepare an EIS before adopting resolutions to establish a local sewer district and submitting these resolutions to the voters of the proposed district, and we ordered that the resolutions and special election be annulled. The Court refused to allow the Town simply to comply with SEQRA before proceeding with the project, noting that "the initiatory action by the town board might well have been practically determinative” and to allow a vote without the benefit of a balanced EIS "would clearly frustrate the objectives of SEQRA” (55 NY2d at 46-47).
 

 Later, in
 
 Chinese Staff & Workers Assn. v City of New York
 
 (68 NY2d 359), we annulled a special permit to construct a high-rise luxury condominium in the Chinatown section of New York City because the lead agencies had conducted a deficient environmental review and had failed to prepare an EIS before the permit had been granted. Again, we rejected the suggestion of the lead agencies that the problems could be obviated by issuance of an "amended negative declaration,” finding that cure of a SEQRA violation has "no support in the carefully drafted procedures of the statute and would effectively allow the municipality to comply with SEQRA * * * only as an afterthought following a successful challenge to their prior action” (68 NY2d at 369).
 

 Shortly thereafter, in
 
 Matter of E.F.S. Ventures Corp. v Foster
 
 (71 NY2d 359), involving construction of an oceanside resort without benefit of comprehensive environmental review, we observed that the State had made protection of the environment one of its foremost policy concerns, and thus "our statute, unlike many others, imposes substantive duties on the agencies of government to protect the quality of the environment for the benefit of all the people of the State” (71 NY2d at 364-365, 371). In allowing the local Planning Board to impose substantial new conditions on the development of the resort
 
 *349
 
 because of the SEQRA violations, we emphasized that if the statutory environmental review requirements of SEQRA are not met, "the governmental action is void and, in a real sense, unauthorized”
 
 (id.,
 
 at 371).
 

 In at least three respects, the matter before us is materially different from
 
 Tri-County, Chinese Staff
 
 and
 
 E.F.S. Ventures.
 

 First, both procedurally and substantively respondent here has actually performed each of the required steps in the SEQRA review process.
 

 Procedurally, respondent developed a Plan/GEIS and took substantial steps to involve interested members of the public
 
 (see,
 
 6 NYCRR 360-15.10, 360-15.9). Relying on the siting criteria established in the Plan/GEIS, respondents conducted an Interim Siting Study and eventually adopted Resolution No. 86 specifying Kobor Road as the "preferred primary site.” Respondent then declared itself "lead” agency
 
 (see,
 
 ECL 8-0111 [6]), prepared an EAF
 
 (see,
 
 6 NYCRR 617.2 [m]; 617.5 [b]) and evaluated the landfill site in light of the statutory criteria outlined in 6 NYCRR 617.11. Based on this evaluation, respondent made a preliminary determination that the proposed project would have a significant effect on the environment
 
 (see, 6
 
 NYCRR 617.6 [g]; 617.10 [b]) and prepared a draft EIS
 
 (see,
 
 ECL 8-0109 [2], [4]). After allowing a period for public comment, respondent prepared a final EIS and circulated the document in the same manner as the draft EIS
 
 (see,
 
 ECL 8-0109 [4], [5], [6]; 6 NYCRR 617.10 [d], [g]). Lastly, respondent made explicit findings that it had fulfilled the requirements of SEQRA and that any adverse environmental impacts discovered during the EIS process would be minimized or avoided to the maximum extent possible
 
 (see,
 
 ECL 8-0109 [8]; 6 NYCRR 617.9 [c]).
 

 Substantively, respondent engaged in the informed and systematic balancing analysis the statute requires. At each stage, respondent sought and considered other points of view and itself evaluated the environmental consequences of the proposed landfill. Unlike
 
 Tri-County,
 
 where we recognized that an agency’s compliance with SEQRA after-the-fact could be an empty exercise rubber-stamping a decision already made, here respondent completed its review before making an actual formal commitment to construction and operation of a landfill at the Kobor Road site. In the end, contrary to appellants’ contention, respondent "identified the relevant areas of environmental concern, took a 'hard look’ at them, and made a
 
 *350
 
 'reasoned elaboration’ of the basis for its determination”
 
 (Matter of Jackson v New York State Urban Dev. Corp.,
 
 67 NY2d 400, 417 [citations omitted]).
 
 *
 

 Second, the case before us is materially different because each step in the SEQRA review process was undertaken and completed at a time when respondent had a "green light” to proceed as it did. Supreme Court had dismissed appellants’ first article 78 proceeding and the Appellate Division affirmed, and Supreme Court had dismissed appellants’ second petition. More than a year elapsed before the Appellate Division decision in
 
 Seymour II,
 
 during which time respondent fulfilled its responsibility to review actions "[a]s early as possible” in the decisional process for purposes of determining whether an EIS will be necessary (ECL 8-0109 [4]). Respondent completed the DEIS process, approved the FEIS, issued its SEQRA Findings Statement and submitted a permit application (which the DEC later approved) before the Appellate Division decision in May 1993.
 

 Finally and relatedly, while the Appellate Division determined that Resolution No. 86 of 1991 was an "action” triggering the need for an EIS, it is significant that neither in
 
 Seymour II
 
 nor in the present case did that court itself order de novo environmental review. Respondent constructs an elaborate argument that, in
 
 Seymour II,
 
 the Appellate Division meant only to invalidate certain "actions” such as obtaining permits, hiring contractors to build the landfill and initiating eminent domain proceedings — none of which took place before respondent completed its SEQRA review. Whether or not this is technically so, we agree with the conclusion unanimously reached by the Appellate Division that "de novo environmental review is not only unwarranted but, at this stage, would be entirely redundant” (223 AD2d at 896).
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed, with costs.
 

 *
 

 Appellants’ other challenges to the sufficiency of the SEQRA review are also without merit. At no time did respondent improperly delegate its lead-agency decision-making responsibility to its consultants. Moreover, the Plan/ GEIS was incorporated into the DEIS in accordance with SEQRA (see, 6 NYCRR 617.14 [b], [h]) and appellants thus received sufficient notice of respondent’s reliance on the Plan/GEIS to prepare the DEIS.