■ In the Matter of Town of Northumberland, Petitioner, v David Sterman, as Deputy Commissioner of the New York State Department of Environmental Conservation, et al., Respondents. [667 NYS2d 505] —Yesawich Jr., J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Environmental Conservation which granted respondent Saratoga County a permit to construct and operate a landfill.

In this transferred CPLR article 78 proceeding, petitioner, the Town of Northumberland (hereinafter the Town) in Saratoga County, challenges several decisions of respondent Deputy Commissioner of Environmental Conservation (hereinafter the Commissioner) leading to the eventual issuance of a permit for the construction and operation of a landfill in the Town. After the permit application was filed by respondent Saratoga County (hereinafter the County), an issues conference was held (see, 6 NYCRR 624.4 [b]), at which the Town (having been granted party status) requested permission to access the proposed landfill site to conduct soil permeability testing pursuant to 6 NYCRR 624.7 (c). The Administrative Law Judge (hereinafter ALJ), finding that the Town had demonstrated the existence of an adjudicable issue (see, 6 NYCRR 624.4 [c]), with respect to whether the County's permeability test results were reliable—and hence whether the latter had adequately proven its entitlement to a variance from the groundwater separation

requirement (*see*, 6 NYCRR 360-2.13 [d]; 360-1.7 [c] [2] [iii])[1]—concluded that the discovery requested by the Town would provide relevant evidence bearing on the resolution of this issue, and granted the desired access. Upon the County's appeal, however, this decision was modified by the Commissioner, who, though he agreed that an issue had been raised regarding the safety of the groundwater, found further testing unwarranted, and denied the Town's discovery request. The Town contends that this decision was erroneous.

Following the issues conference, the ALJ also concluded that the Town had raised several other substantive and significant issues requiring adjudication, including whether the proposed project would have a negative impact upon the Northern Harrier, a threatened wildlife species found in the area; whether the site selection process complied with the relevant criteria; whether compliance with the groundwater separation requirement would impose an unreasonable economic burden on the County and whether the noise levels at the site would exceed the applicable limits. The Commissioner, disagreeing with several of the ALJ's rulings, concluded that no adjudicable issue had been posed with respect to the site selection study or the economic impact of satisfying the groundwater requirement. In addition, finding the noise limits set forth at 6 NYCRR 360-1.14 (p) were intended to apply to operating noise only, and not to that generated during the construction period, the Commissioner directed that appraisal of the noise levels be limited accordingly. The Town challenges these rulings.

The adjudicable issues having been identified, an adjudicatory hearing ensued, at which the Town argued that the permit application and three requested variances should be denied, and presented evidence to that end. The ALJ recommended that one of the necessary variances, an airport separation variance, and the permit, be denied. However, the Commissioner thereafter found, *inter alia*, that the construction and operation of the facility would not run afoul of the laws and regulations prohibiting the "taking" of a threatened species (the Northern Harrier) or destruction of its critical habitat, and that the County had met the requirements for obtaining each of the variances; consequently, he directed that each of the variances be granted and that the permit be issued. This CPLR

---

1. Inasmuch as the County's project application was deemed complete on July 30, 1993, the revisions to 6 NYCRR part 360 which went into effect on October 9, 1993 are inapplicable to this proceeding. Accordingly, all references made herein to part 360 are to the regulations in effect prior to that date.

article 78 proceeding, in which the Town seeks annulment of the Commissioner's determination, followed.

The Town's first contention, that it should have been granted access to the site to conduct soil tests, has merit. Having determined that the permeability of the soil at the site was a critical factor in deciding whether the County had met the criteria for obtaining a variance from the groundwater separation requirement (*see*, 6 NYCRR 360-1.7 [c] [2] [iii]), and that the Town had presented sufficient evidence to call into question the reliability of the County's permeability findings, the Commissioner properly found an adjudicable issue existed. He nevertheless held that further testing was "not necessary", because the results of tests previously performed by the Town, on a parcel of land adjacent to the proposed landfill site, were sufficient to "raise[ ] a substantive and significant issue regarding permeability", and that re-evaluation of the already existing data at the adjudicatory hearing would "provide[ ] a forum to examine conflicting information and a safety net to ensure proper engineering design".

But if the County's data is not accurate or reliable, repeated evaluation of that data plainly would not be sufficient to ferret out any flaws in the design of the system. Nor can one rationally conclude, merely because the limited, off-site testing carried out by the Town's expert prior to the issues conference was adequate to raise a question as to the correctness of the County's permeability assumptions, that further investigation would not be necessary to actually adjudicate that question. Moreover, although the Commissioner indicated that "the permeability information of both [the Town's expert] and the County should be evaluated in the hearing", his refusal to allow the Town's expert to gather any such information from the proposed site effectively prevented the very analysis he directed be undertaken.

Inasmuch as there was every indication that the proposed testing would have produced relevant, probative evidence bearing on an adjudicable issue, and the Commissioner posited no reasonable basis for denying the Town the brief site access it sought for that purpose, his determination cannot be said to have had a sound basis in reason (*see*, *Matter of County of Monroe v Kaladjian*, 83 NY2d 185, 189). Accordingly, it must be annulled, along with the decision granting the groundwater separation variance (and the permit, which depended thereon), and the matter remitted for redetermination of the groundwater safety issue after the Town is afforded access to the site to perform testing.

The Town's remaining arguments are unpersuasive. The Commissioner essentially upheld the ALJ's conclusion that the landfill project would not adversely affect the Northern Harrier and adequately set forth his reasoning in this respect, explaining that "the mitigation plan can be readily implemented * * * and promotes conservation" of this threatened bird species. Having adopted the ALJ's position that the mitigation efforts would avoid any "taking" of the Harrier, or the destruction or adverse modification of its habitat, the Commissioner not improperly found that this rendered it unnecessary to consider whether the lands in question constituted "critical habitat". Noting that his decision should not be construed as accepting the ALJ's position with respect to the definition of that term, he concluded that its proper construction would be better left to future development on a case-by-case basis. Though petitioner suggests otherwise, we find that insofar as the Commissioner disagreed with the ALJ, his decision details sufficiently the basis for his conclusions (*see, Matter of Concerned Citizens v Zagata*, 231 AD2d 851, 852, *lv denied* 89 NY2d 814).

Nor was it wrong for the Commissioner, whose interpretation of the pertinent regulations is entitled to deference (*see, Flacke v Onondaga Landfill Sys.*, 69 NY2d 355, 363; *Matter of Fiorillo v New York State Dept. of Envtl. Conservation*, 123 AD2d 151, 153, *appeal dismissed* 70 NY2d 641), to conclude that the provisions governing the site selection process, set forth at 6 NYCRR 360-2.12, are procedural in nature, and intended only to ensure that "a disciplined site selection process be used and explained by the applicant", not to serve as a vehicle for substantive reevaluation of the end result of this process. Inasmuch as the site selection methodology was evaluated in conjunction with the SEQRA process (*see, Matter of King v Saratoga County Bd. of Supervisors*, 223 AD2d 894, 897, *affd* 89 NY2d 341), there is no reason to duplicate that review at this juncture. And, the Commissioner's interpretation of the regulation delineating acceptable noise levels that may emanate from the landfill (*see,* 6 NYCRR 360-1.14 [p]), as imposing a duty upon those who design and construct it (as well as those who operate and maintain it), to perform their respective functions so as to enable the facility to *operate* within the established noise limits, is likewise neither irrational nor contrary to the plain language of the regulation (*compare, Mental Hygiene Legal Serv. [DeAngelo] v Cuomo*, 195 AD2d 189, 190-191).

Although compliance with the noise requirements must be gauged by measuring sound levels at the property lines (*see,* 6

NYCRR 360-1.14 [p]), where, as here, a variance is sought,[2] those standards do not control; rather, the advisability of granting the variance is governed by 6 NYCRR 360-1.7 (c). The noise level at or around nearby residences, while irrelevant to a determination of whether the facility complies with 6 NYCRR 360-1.14 (p), may be considered when deciding whether the variance provisions have been satisfied and when arriving at the conditions to be placed on a variance if one is granted (*see,* 6 NYCRR 360-1.7 [c] [3]). The Town's contrary urgings aside, we do not find the condition imposed here—that if future residential development occurs in an area affected by noise from the facility, "the County must take whatever action is necessary to mitigate noise impacts so that sound levels are maintained at or below that limit at the residence and any associated area of frequent activity"—lacks the required degree of specificity (*see,* 6 NYCRR 360-1.7 [c] [3]).

The Town's other contentions have been considered and found unpersuasive.

Mikoll, J. P., Peters, Spain and Carpinello, JJ., concur. Adjudged that the determination is annulled, without costs, and matter remitted to respondents for readjudication of the issue of soil permeability and its impact on respondent Saratoga County's ability to demonstrate its entitlement to a variance from the groundwater separation requirement, after petitioner is afforded a reasonable opportunity to conduct on-site testing as requested.

---

2. After admitting, at the issues conference, that the facility could not meet the regulatory limits, the County had applied for a noise variance. Thus, the issue presented at the adjudicatory hearing was whether that application should be granted.