AJC Assoc., L.P. v Town of Perinton (2004 NY Slip Op 50790(U))

[*1]

AJC Assoc., L.P. v Town of Perinton

2004 NY Slip Op 50790(U)

Decided on July 16, 2004

Supreme Court, Monroe County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on July 16, 2004

Supreme Court, Monroe County
AJC ASSOCIATES, L.P. and ANGELO CRECCO, Petitioners,
against
TOWN OF PERINTON, TOWN BOARD OF THE TOWN OF PERINTON, PLANNING BOARD OF THE TOWN OF PERINTON, BOARD OF APPEALS OF THE TOWN OF PERINTON, ESL FEDERAL CREDIT UNION, and MILLS ASSOCIATES, III, Respondents.
THE CANANDAIGUA NATIONAL BANK AND TRUST COMPANY, Petitioner,
against
TOWN OF PERINTON, TOWN BOARD OF THE TOWN OF PERINTON, PLANNING BOARD OF THE TOWN OF PERINTON, BOARD OF APPEALS OF THE TOWN OF PERINTON, ESL FEDERAL CREDIT UNION, and MILLS ASSOCIATES, III, Respondents.
04-2460

HARRIS, CHESWORTH & O'BRIEN
Douglas A. Bass, Esq. of Counsel
Attorneys for Petitioner The Canandaigua National Bank and Trust Company
300 Linden Oaks, Suite 100
Rochester, New York 14625
REMINGTON, GIFFORD, WILLIAMS &
COLICCHIO, LLP
Robert B. Koegel, Esq. of Counsel
Attorneys for Petitioners AJC Associates, L.P.
and Angelo Crecco
183 East Main Street, Suite 1400
Rochester, New York 14604
PLACE & ARNOLD
Robert Place, Esq. of Counsel
Attorneys for Respondent Town of Perinton, et al.
27 Pleasant Street
Fairport, New York 14450
NIXON PEABODY LLP
Thomas C. Greiner, Esq. of Counsel
Attorneys for Respondent ESL Federal Credit Union
Clinton Square
P.O. Box 31051
Rochester, New York 14603
WOODS OVIATT GILMAN LLP
Donald W. O'Brien, Jr., Esq. of Counsel
Attorneys for Respondent Mills Associates, III
700 Crossroads Building
2 State Street
Rochester, New York 14614

Robert J. Lunn, J. 
 On May 21, 2003, respondent ESL Federal Credit Union began the long, arduous process of seeking the necessary approvals from co-respondent Town of Perinton for the construction of a stand alone drive through ATM banking facility to be located on the east side of Moseley Road, also known as State Route 250, immediately north of the Canandaigua National Bank branch at Perinton Square Mall. Respondent Mills Associates III is the owner of the land to be leased to ESL for the ATM facility. Petitioner AJC Associates, L. P. is the owner of the Perinton Square Mall which abuts the project site to the south. The proposed ATM facility was designed with an entrance and exit directly from Moseley Road. Access to and from the site was also proposed via Perinton Square Mall to the south over an access easement which was granted by petitioner Angelo Crecco to the Town of Perinton in 1995 as a condition of the Perinton Planning Board's approval for the construction of a Tops Friendly Market at Perinton Square Mall.
The first necessary approval from the Town of Perinton was to rezone a 2.745 acre parcel of land from a B Residential district to a RB Restricted Business district. The rezoning [*2]application was later modified to propose that only a 1.486 parcel of land be rezoned. The Perinton Town Board referred the rezoning request to the Town of Perinton Planning Board for its recommendation. Following a public hearing on September 17, 2003, the Planning Board voted to recommend the rezoning to the Town Board. On October 14, 2003, the Perinton Conservation Board also recommended that the Town Board rezone the parcel. This recommendation followed no less than seven meetings of the Conservation Board at which it considered this project. On October 22, 2003, the Town Board issued a negative declaration under the State Environmental Quality Review Act (ECL Art 8 [hereinafter SEQRA]) for the rezoning and rezoned the parcel to RB, Restricted Business.
Following the rezoning, on November 13, 2003, ESL next made separate applications for an LDD special permit from the Town Board, for site plan approval from the Planning Board and for two area variances from the Town of Perinton Zoning Board of Appeals for its ATM drive through facility. On December 10, 2003, the Town Board issued another negative declaration under SEQRA relative to the LDD special permit application and also granted the LDD special permit. Minutes of that decision were filed with the Town Clerk on December 30, 2003. The Planning Board, on January 21, 2004, also issued a SEQRA negative declaration and granted preliminary site plan approval for the ATM facility subject to certain conditions, including "Further study of traffic circulation at the easement for Perinton Square Mall, and at the next intersection within the mall to be completed." In its negative declaration resolution, the Planning Board stated that, "With respect to traffic circulation between the Project Site and Perinton Square Mall by way of the Town's access easement (the "Easement"), there is sufficient room within the easement to provide for appropriate traffic circulation devices and markings for stopping, queuing, etc. Although the final design of such devices and markings is not yet finished, the Board is confident that any traffic circulation issue and its resolution will not present a significant environmental impact." On January 26, 2004, the Zoning Board of Appeals granted two area variances for lot width and access points. Lastly, on March 5, 2004, the Planning Board granted final site plan approval for the project subject to obtaining all other required state and/or federal agency permits and ESL was to explore with respondent Crecco implementing two traffic improvements on the mall property, those being the relocation of a stop sign and remarking driving lanes, all to be funded by ESL. Prior to granting final site plan approval, the Planning Board received and reviewed the traffic study prepared by ESL's engineer and reviewed by the Town's traffic engineering and planning consultant requested by the Planning Board as a condition of preliminary site plan approval.
Petitioners, on March 3, 2004, and prior to final site plan approval, commenced these CPLR Article 78 and declaratory judgment proceedings. In both proceedings petitioners seek to annul and vacate all approvals granted by the municipal respondents to ESL Federal Credit Union for the construction of the ATM drive through kiosk arguing that the negative declarations issued by them were done in violation of SEQRA. They also seek a declaration that the proposed project is subject to a use variance under the Town of Perinton zoning ordinance. Petitioners AJC Associates and Angelo Crecco further desire an order declaring that the access easement granted by Angelo Crecco to the Town of Perinton is subordinate to a certain conservation easement also granted by petitioner Crecco to the Town with the result that the access easement may not be used to convey traffic between the project site and petitioner AJC [*3]Associates' property. In turn, respondents move to dismiss the petitions and for sanctions against petitioner Crecco. Finally, petitioner Crecco cross-moves for sanctions against respondent ESL Federal Credit Union.
Preliminarily, while the petitions herein seek to annul "any and all approvals granted by the municipal respondent to ESL" for failure to comply with SEQRA, the only approvals for this project which may be the subject of judicial review are preliminary site plan approval by the Town of Perinton Planning Board granted on January 21, 2004, which also included the SEQRA negative declaration, and final site plan approval granted by the Planning Board on March 5, 2004. Review of the Town Board's rezoning of the Mills parcel on October 22, 2003 is time-barred by the four month statute of limitations for rezoning (see Save Pine Bush, Inc. v City of Albany, 70 NY2d 193, 203 [1987]). Any challenge to the Zoning Board's grant of two area variances by decision dated January 28, 2004 is subject to a thirty day statute of limitations (Town Law §267-c[1]). Any cause of action challenging the grant of these variances is thus time-barred. Lastly, to the extent these petitions seek review of the Town Board's grant of a LDD Special Permit to ESL on December 10, 2003, the minutes of which were filed with the Town Clerk on December 30, 2003, such review is time-barred by the thirty day statute of limitations found in Town Law §274-b(9).
The first cause of action in both petitions seek to annul the Planning Board's preliminary site plan approval due to the alleged failure of that board to properly comply with SEQRA when it issued its negative declaration for this project in conjunction with preliminary site plan approval. Specifically, petitioners argue that the Planning Board in issuing its negative declaration on January 21, 2004 did not give the requisite "hard look" to the impact of traffic generated by the ATM project on the mall property to the south which was to be connected to the ESL facility via the cross-access easement given by petitioner Crecco to the Town of Perinton. The essence of this argument is that prior to the negative declaration, all of the traffic studies and traffic study reviews never looked at the impact of traffic generated by this project on the mall, only on ingress and egress to Route 250.
In enacting SEQRA, the state legislature "recognized that environmental concerns should take their proper place alongside economic interests in the land use decision-making processes of State and local agencies" (King v Saratoga County Bd. of Sup'rs, 89 NY2d 341, 347 [1996]). Therefore "an elaborate procedural framework" was created governing an agency's environmental review of a project or action (Id. at 347). "In assessing the significance of a proposed action under SEQRA, the lead agency must thoroughly analyze the identified relevant areas of environmental concern to determine if the action may have a significant adverse impact on the environment; and ... set forth its determination of significance in a written form containing a reasoned elaboration and providing reference to any supporting documentation" (New York City Coalition to End Lead Poisoning, Inc. v Vallone, 100 NY2d 337, 347 [2003] quoting 6 NYCRR 617.7 [b][3],[4]). Judicial review of an agency's determination of significance is limited to "whether the agency identified the relevant areas of environmental concern, took a 'hard look' at them, and made a 'reasoned elaboration' of the basis for its determination (Matter of Jackson v New York State Urban Development Corp., 67 NY2d 400, 417 [1986]). While "courts may not [*4]substitute their judgment for that of the agency" (Merson v McNally, 90 NY2d 742, 752 [1997]), "literal compliance with both the letter and spirit of SEQRA is required and substantial compliance will not suffice" (Inland Vale Farm Co. v Stergianopoulos, 104 AD2d 395, 396 [2nd Dept 1984]).
Clearly, the record demonstrates that the Town of Perinton Planning Board identified the potential environmental impact of traffic generated by the proposed ESL drive through ATM on both Moseley Road and Perinton Square Mall accessed via the access easement. The central issue raised in this branch of these Article 78 proceedings is whether the Planning Board took the requisite "hard look" at this issue and "made a reasoned elaboration" of the basis for its determination when it made its finding of no significant impact on the environment at its January 21, 2004 meeting (Matter of Jackson, 67 NY2d at 416). After a through review of the record, this court concludes that it did.
Initially, the Planning Board considered the Traffic Impact Analysis Report, dated August 2003, prepared on behalf of ESL. This report was also reviewed by the Planning Board as part of ESL's rezoning application to the Town Board. While this initial report dealt primarily with traffic impacts by the proposed project on Moseley Road, it did state that "approximately 25% of the westbound left turns will use the Perinton Square Mall access." More specifically addressing petitioners' concerns about the impact of traffic generated by the ESL ATM facility on Perinton Square Mall via the access easement was the Cross Access and Internal Circulation Review prepared by SRF & Associates at the request of the Town's Department of Public Works. This report was also submitted to the Planning Board as part of the site plan approval process. In this report, the traffic consultant concluded regarding use of the cross access easement that, "given the trip generating characteristics of this proposal, we believe the activity to be minor in nature." Additionally, following a field review of the existing Perinton Square Mall traffic circulation system and the proposed connection point, the consultant found that with some changes to pavement markings and signage, the "roadway system is adequate".
At both public hearings held by the Planning Board relative to site plan approval for this project, traffic from the drive through ATM facility to Perinton Square Mall was extensively commented on by the public and discussed by Planning Board members. In fact, every Planning Board member had concerns relative to the effect of traffic between the proposed ATM facility and the adjoining mall. The consensus between the board members appeared to be that an "internal traffic study" needed to be prepared before final site plan approval would be considered. This concern led to the condition attached to preliminary site plan approval that, "Further study of traffic circulation at the easement for Perinton Square Mall, and at the next intersection within the mall to be completed."
The parties to these proceedings debate whether the purpose of the subsequent traffic study was to determine the overall impact of traffic generated by the new banking project upon that portion of Perinton Square Mall which would be connected to ESL's new ATMs or whether the study was simply to help determine the best way to install traffic control devices at the new intersection. This debate is immaterial because the study addressed both concerns. The real issue is whether the SEQRA process was violated because this study was done after the Planning Board adopted a negative SEQRA declaration for this project. While it may have been preferable to have received the subsequent "internal traffic study" prior to adopting a SEQRA resolution of [*5]non-significance, this court finds that the procedure taken in this matter did not violate SEQRA as it resulted in the Planning Board taking a "hard look" at the internal traffic issue and making a "reasoned elaboration" for its decision.
After receipt and review of the traffic study required by the Planning Board as a condition to preliminary site plan approval, the Board as lead agency had the power to amend or rescind its negative declaration if substantive changes were proposed to the project, substantive new information was discovered or substantive changes in circumstances relating to the project arose that were not previously considered by the agency (6 NYCRR §617.7[e],[f]; see Boyles v Town Board of the Town of Bethlehem, 278 AD2d 688 [3rd Dept 2000]). The study itself and its subsequent review did not produce any substantive new information or substantive changes to the project. As such, deferring consideration of the merits of the internal traffic study was not an improper segmentation of environmental review (see Matter of Terrace Manor Civic Association v Town of North Hempstead, 301 AD2d 534, 535 [2nd Dept 2003]). Traffic volumes at the proposed new intersection were found by the study to be "minimal". It concluded that no increase in traffic was expected. Finally, the study recommended that proper pavement markings and signs would allow for the smooth and orderly flow of traffic. The Town's traffic consultant reviewed the study and concurred with these opinions.
Nor can it be said that the Planning Board failed to take a "hard look" at the internal traffic issue or abused its discretion in declining to reopen SEQRA review and amend or rescind its negative declaration (Boyles v Town Board of the Town of Bethlehem, 278 AD2d at 691; Matter of Terrace Manor Civic Association v Town of North Hempstead, 301 AD2d 534, 535). Unlike the situations presented in the cases cited by counsel for petitioner AJC Associates, the Planning Board was not deferring review of the internal traffic issue to another agency (see Penfield Panorama Area Community, Inc. v Town of Penfield Planning Board, 253 AD2d 342, 350 [4th Dept 1999]; Corrini v Village of Scarsdale, 1 Misc 3d 907 [Sup Ct Westchester Co 2003]). Also, the later internal traffic study was not shielded from either the public's or the court's scrutiny like the deferred studies which were the subjects of Penfield Panorama Area Community, Inc. v Town of Penfield Planning Board, 253 AD2d 342 and Town of Red hook v Dutchess County Resource Recovery Agency, 146 Misc 2d 723 (Sup Ct Dutchess Co 1990). Those cases involved adoption of final environmental impact statements following positive declarations. Here, there was a negative declaration, final subdivision approval had not yet been given and, even though not required, public comment was invited at the March 3, 2004 Planning Board meeting prior to voting on final site plan approval. In sum, the Planning Board did take a "hard look" at the internal traffic issue and "made a reasoned elaboration" of the basis for its determination such that its negative SEQRA declaration cannot be considered arbitrary and capricious.
The second cause of action in each petition seeks an order enjoining construction of the ESL ATM facility until ESL obtains a use variance from the Perinton Zoning Board of Appeals. Petitioners argue that a stand alone drive through ATM facility is not a permitted use in an RB, Restricted Business district because it cannot be considered a "banking office" and it is not located "within a completely enclosed building" as contemplated by the Perinton zoning ordinance (see Perinton Town Code §208-39[A][1]).

[*6]
The Town of Perinton Building Inspector has submitted an affidavit in opposition to the petitions herein in which he states that he has treated freestanding ATM machines as drive up teller windows which are a permitted use under Perinton Town Code §208-39(A)(1). Petitioners have submitted no proof that freestanding ATM machines cannot be considered a drive up teller window and hence not permitted as part of a "banking office". Additionally, the Building Inspector states that the Town considers a freestanding ATM machine to be housed within a completely enclosed building because it fits within the definitions of a building and structure set forth in the Perinton Zoning Ordinance (see Perinton Town Code §§ 208-8). Therefore, in the Town's opinion, the cabinets housing the ATMs are considered enclosed buildings and thus a permitted use in a RB zoning district. Presumably, it is for this reason that respondent ESL was not directed by the Town Board to obtain a use variance once the property was re-zoned to RB, Restricted Business. Stated another way, it would make no sense to apply for and receive a zoning change on a piece of land upon which even after the rezoning your proposed use was not permitted. "Since only the Town Board is empowered to grant a zoning change, its interpretation applying the Zoning Law to the parcel in question should govern unless it is unreasonable or irrational" (McGrath v Town Bd. of Town of North Greenbush, 254 AD2d 614, 619 [3rd Dept 1998]). The Town's interpretation that a free standing ATM facility is a permitted use in a RB zoning district is not unreasonable or irrational. Parenthetically, the same interpretation was applied by the Town to petitioner Canandaigua National Bank when approvals were given to it on December 1, 1999 for its stand-alone ATM located at its branch in Perinton Square Mall. Accordingly, the second cause of action in both petitions is denied and dismissed.
Petitioners AJC Associates, L.P. and Angelo Crecco also brought a third cause of action challenging the Town's ability to assign to ESL its rights in the access easement providing a means of ingress and egress to the proposed ESL ATM facility through the Perinton Square Mall property. They also argue that the access easement cannot really provide access to and from the ESL ATM facility because it is subordinate to a conservation easement which also runs with the same land. There is no merit to petitioner's contentions.
In November, 1994, as part of the conditions for site plan approval for the construction of a Tops Friendly Market at Perinton Square Mall, petitioner Angelo Crecco agreed to provide a conservation easement to the Town of Perinton restricting development of any kind within the easement area. The conservation easement was thirty feet in width and ran along the mall's north property line adjacent to respondent Mill's property. The easement was given in consideration for the new Tops supermarket being built within the Town's fifty foot buffer requirement. At this same time, Mr. Crecco also agreed to convey to the Town a cross access easement from his mall property to the Mills property to the north. The access easement was assignable by the Town without Mr. Crecco's consent upon the rezoning to commercial or restricted business use of the property adjacent to Crecco's land. The two easements were recorded in the Monroe County Clerk's Office on May 30, 1995, with the conservation easement being the first to be recorded. By necessity, the access easement overlaps or intersects the conservation easement over a 30' by 40' area. Petitioner Crecco now claims that since the access easement contains language making it "subject to all covenants, easements, liens, encumbrances and/or restrictions of record" and the conservation easement was recorded first and prohibits any development of any kind within it, an access road may not be built using the access easement because to do so would violate the [*7]conservation easement. Petitioner argues that the access easement is subordinate to the conservation easement and therefore development of the ESL access road between it and the mall property is prohibited by its terms.
Clearly, the two easements were part of the same transaction and must be read and interpreted together (22 NY Jur 2d, Contracts §258). Additionally, "one of a court's goals is to avoid an interpretation that would leave contractual clauses meaningless" (Two Guys from Harrison-N.Y., Inc. v S.F.R. Realty Associates, 63 NY2d 396, 403 [1984]). A review of the record in this matter unquestionably demonstrates that all of the parties, including petitioner Crecco, intended that at some point in the future, once utilized, the cross access easement would intersect the conservation easement and allow for a road to be constructed across the conservation easement. To adopt petitioner Crecco's interpretation of the two easements, which must be read together, would in effect render the access easement a nullity. This result surely was not intended by the parties. It is ultimately the intent of the parties which controls (see RPL §240[3]).
Petitioner's other arguments attacking the validity of the easements are also unavailing. Conservation easements need not be created solely under the Environmental Conservation Law. Petitioner cites no authority to the contrary. This court's decision in Smith v Town of Mendon, Index No. 2002/09304, dated 01/16/2003, does not stand for such a broad proposition. Also, all of the conditions precedent for assignment of the access easement by the Town have been substantially satisfied. The portion of the Mills property containing the access easement has been rezoned to restricted business. It is the court's understanding that the balance of the property is to be dedicated to the Town to be kept "forever wild". This satisfies the condition of a fifty foot buffer to be provided by Mills. The fact that the proposed road to be constructed on the access easement is not to be the full width of the easement is of no moment. The town is only requiring a twenty-four foot wide road between the parcels. This is certainly within its discretion. Lastly, respondent Mills has given the "similar reciprocal easement" to the Town which will allow patrons of the mall to use the ESL access road. For all of the foregoing reasons, respondents' motion to dismiss petitioners AJC Associates, L.P. and Angelo Crecco's third cause of action is granted.
Petitioner AJC Associates has also made a claim that the municipal approvals given to ESL should be voided because the Town did not consult with the New York State Historic Preservation Office prior to giving its approvals. This claim lacks merit for the simple reason that the New York State Parks, Recreation and Historic Preservation Law only applies to approvals by state agencies (see PRHPL §14.09). The Town of Perinton had no obligation to consult with the New York State Historic Preservation Office relative to this project. Also, the failure of ESL at this time to receive all other required permits for its project is not fatal to the approvals given by the Town of Perinton. Final site plan approval was conditioned upon ESL receiving all other required governmental permits. No time limitation was imposed for receipt of these other permits.
For the foregoing reasons, the petitions herein are denied and dismissed in their entirety. Respondent ESL's counterclaim for sanctions against petitioners AJC Associates and Crecco is also denied. This court cannot say that their petition was frivolous as contemplated by 22 NYCRR §130-1.1. Also, CPLR §8303-a does not apply to this type of proceeding. Likewise, [*8]Petitioner Crecco's cross-motion for sanctions is also denied. Respondent ESL's attorney shall
submit a judgment in conformance with this decision on notice to all other attorneys for the parties herein. The filing of the papers upon which this decision is based is dispensed with pursuant to CPLR 2220(a).
DATED: July 16, 2004
 Rochester, New York
____________________________________
HON. ROBERT J. LUNN
SUPREME COURT JUSTICE